No. 5333.

## H. C. WRIGHT *v.* LEM W. LASSITER.

1. SHERIFF'S DEED—DESCRIPTION.—In a sheriff's deed, otherwise valid, reference is made to other well known deeds for description; the deeds so referred to are produced, and describe the land; *held*, that such deed will convey title to the land so identified.
2. PAROL AGREEMENT—DIVISION LINE.—A license by parol by one party to the other. being interested in a disputed division line, to occupy part

of the land in dispute to a designated line, is not equivalent to an agreement upon such line as a division line.

3. POSSESSION AS NOTICE.—Possession is taken under a title bond not recorded. That part occupied is not in dispute. As to that part which is in dispute, such possession is not notice.

4. PURCHASE WITHOUT NOTICE.—There being no record of the title bond, nor possession of the land sold, nor evidence of notice by a purchaser of the land sold, such purchaser would hold against the elder unrecorded title bond.

ERROR from Red River. Tried below before the Hon. D. H. Scott.

This was an action in trespass to try title, brought by Lassiter against Wright. The question involved was one of boundary. At fall term, 1887, judgment was rendered for the plaintiff for the land in dispute. The defendant, by writ of error, seeks a reversal of the judgment. The facts are given in the opinion.

*Sims & Wright,* for plaintiff in error

*Chambers & Doak,* for defendant in error, cited Cooper v. Austin, 58 Texas, 494; Coleman v. Smith, 55 Texas, 258; Hefner v. Lockhart, 57 Texas, 576; Wimberly v. Bailey, 58 Texas, 223; Mullins v. Wimberly, 50 Texas, 457; Mann v. Falcon, 25 Texas, 271; Hart v. McDade, 61 Texas, 208; Wooters v. Arledge, 54 Texas, 396; Mitchell v. Ireland, 54 Texas, 301; Freeman on Ex., 230; DeLoach v. State Bank, 27 Ala., 457; Boardman v. Reed, 6 Pet., 328.

WALKER, ASSOCIATE JUSTICE. This was an action in trespass to try title by Lassiter against Wright. The dispute is as to the locality of the common dividing line between Lassiter on the east and Wright on the west of it.

Both claimed under B. H. Epperson, or rather through his independent executors, Russell & Epperson. B. H. Epperson in his life time had subdivided the William Walter survey, and had sold the tract claimed by Wright to one John A. Chambers. He had also sold a subdivision east of and adjoining to James H. Caton, containing 248 acres. The west half of the Caton tract was subsequently sold to one Thompson, under whom Lassiter deraigns title.

Chambers died, and his widow, representing his estate, surrendered the land to Epperson by quit claim deed. The tract was sold to one Ward, under whom Wright claims, under an execution issued under a judgment rendered against B. H. Epperson and others, and revived against his executors. The sheriff's deed is somewhat indefinite in describing the land sold, but it is further described in the deed as "being the same land conveyed by B. H. Epperson to J. A. Chambers, November 8, 1872, to which deed reference is made for more specific description, and which was reconveyed by the executrix of said J. A. Chambers to said B. H. Epperson, which deed is recorded in book X, page 126, Record of Deeds, Red River county." The locality of this land is testified to by the defendant. The deed by the sheriff to Ward was executed March 3, 1880, and was filed for record April 7, 1880. April 28, 1880, Russell and Culbertson, executors, conveyed to Elmore and Gaines the land claimed by Lassiter. The deed conveyed 124 acres, more or less, situated   *   *   *   part of the Wm. Walker survey, and the west half of 248 acres once sold to James H. Caton and taken back, and adjoining and next to a tract of 360 acres out of the same survey and sold to John A. Chambers and taken back;" and recites that "the intention of this instrument is to convey the same land that was conveyed to the said Elsmore and Gaines, in a deed dated December 9th, 1879, in which errors appear in the field notes—this deed being made to correct the same; also to convey the same land conveyed to John L. Thompson by B. H. Epperson in a bond bearing date November 30th, 1876." This deed referred to field notes for description, which include the disputed territory. Lassiter held under this conveyance. It appeared that Thompson claimed that his tract extended over the land in dispute, which is sixty-one varas wide at the south end, ninety-five varas at the north, and fourteen hundred varas in length. It appears that he never had any improvements upon it. It also appears that parties under Thompson down to the plaintiff claimed the tract. It seems that the deed of April 28 was made to include the land to the extent claimed under Thompson. Though his land called for one hundred and twenty-four acres, the west half of the Caton tract, Lassiter's grantor, J. J. Pardue, testified "that while witness claimed to own the land in dispute, with defendant's consent he commenced at their north line and ran south on a line with

where plaintiff claims the west boundary line in dispute to be, for several hundred yards, and fenced up the north end of the strip of land in dispute. That afterwards some difficulty took place between witness and the defendant about the fence. While Thompson's bond for title only called for one hundred and twenty-four acres, he took possession up to where plaintiff claims."

It is not disputed but that the line between the Caton and Chambers subdivisions gives the land in dispute to Wright. It is equally clear that it is included within the field notes attached to and made part of the deed by Russell and Culberson to Elmore and Gaines.

The execution sale and sheriff's deed made under the judgment against B. H. Epperson, revived against his independent executors, passed the title from the Epperson estate to Ward to all the land included. The reference to the deed from B. H. Epperson to Chambers, and from Mrs. Chambers back to Epperson, of record with the further identification of the land in evidence by the witnesses Howell and the defendant Wright, will sufficiently describe the subdivision of the Walker survey, intended to be the subject of the sale. (Brown v. Chambers, 63 Texas, 135; Steinbeck v. Stone, 53 Texas, 382.) It also passed all title thereto which was in the Epperson estate. (McDade v. Hart, 61 Texas.)

The testimony of the witness Pardue that "by consent of defendant he had inclosed part of the land in dispute," does not go to the extent that they, witness and Wright, had mutually agreed upon the line, as claimed by witness, to be the division line between their adjoining tracts of land. His testimony does not establish an agreed line.

A witness, Howell, testifies "that prior to B. H. Epperson's death, and while Thompson was holding the land subsequently conveyed to Elmore and Gaines under a bond for title, which had never been recorded, Thompson sent witness up there to run off the land. That he at that time lived with Thompson, who told witness that Mr. James H. Caton knew where the line was and would show it to him. That upon seeing Caton he pointed out the west boundary line at about where defendant now claims it to be. That the lands spoken of in the sheriff's deed as the John A. Chambers land was the same land now held by the defendant; that is, the west boundary line of the

Thompson subdivision was the east boundary of the Chambers tract.

It was also shown that, measuring on the north end, the Caton two hundred and forty-eight acres tract, of which Thompson's bond was for the west half, at about the distance called for (within four or five feet), is found a bois d' arc post as if placed for corner, corresponding with the line as claimed by Wright. It would seem that the lines of the subdivisions made by Epperson were well known or capable of identification.

It seems that Thompson exhibited field notes which were either in or attached to his title bond from Epperson from which the description was taken, which was attached to the deed from Russell & Epperson to Elmore & Gaines. While he claimed the strip of land in dispute he never had any improvements upon it nor was his bond ever recorded.

The levy and execution sale of the three hundred and sixty acres Chambers tract, the records showing title to it to be in the Epperson estate, would pass title thereto against Thompson and those claiming under him, it not appearing that Ward, the purchaser, or the plaintiff in the execution, had notice of such claim. The occupation of the undisputed part would convey no notice of the claim. (45 Texas, 526, Grace v. Wade; Id., 564, Simpson v. Chapman; 47 Texas, 442, Linn v. Lecompte; 68 Texas, 448, Lewis v. Johnson.)

The subsequent deed by Epperson's executors could not affect Ward's title.

From the testimony it is not clear that Thompson's title bond included more than the west half of two hundred and forty-eight acres tract which had been sold to Caton, lying between the Scoff and the Chambers tracts. But if it did then the claim was concluded by the levy and execution sale before the execution of the deed under which the plaintiff claims.

It is here held that the sheriff's deed in referring to other deeds which are shown to have been well known, and which described the land, was sufficient to indentify the land sold. (2) That a license by one party to the other to occupy a part of the land in dispute is not equivalent to a mutual agreement upon a division line, although such license extended to the occupation up to line claimed by the party to whom the license was given. (3) That possession under an unrecorded bond for title of a part of the land described in the bond and not in

dispute is not notice of claim to that part in dispute, and (4) that in absence of notice of such claim to the plaintiff in execution or to the purchaser at execution sale the levy and sale passed title, the legal title appearing of record in the defendant in execution.

The judgment below should have been for the defendant, and thus it will be reversed.

*Reversed and remanded.*

Opinion delivered November 2, 1888.