WILLIAM BAKER TURNER ET AL. v. M. A. COCHRAN.

No. 999. Decided April 15, 1901.

**1. Registration—Mortgagee—Notice—Burden of Proof.**

As against one holding land by an unrecorded deed, the holder of a junior mortgage is in the relation of a purchaser who has to show, by evidence outside the recitals of his conveyance, that he bought for valuable consideration and without notice of previous conveyances, and not of a creditor who had established a lien against the grantor by process of law, and whose lien prevails unless notice of the unrecorded deed is shown. (Pp. 484-486.)

**2. Mortgage—Registration—Notice.**

Section 3 of Act of May 15, 1838, requiring that mortgages be recorded within ninety days (Paschal's Digest, article 4995), was superseded by the amendatory acts of February 5, 1840, making unrecorded mortgages good between the parties, which rule has since prevailed. The record, though not made within ninety days, is notice from the time it was made. (Pp. 486, 487.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*H. & A. R. Masterson,* for appellants.—The appellant John Hamman having the legal title to the land by deeds warranting the title from J. A. Thompson, the common source of title of all the parties, was not required by law to prove that he was a purchaser for value without notice. Barnes v. Jamison, 24 Texas, 364; Millican v. Millican, 24 Texas, 444; McAfee v. Wheelis, 1 Posey U. C., 71; Saunders v. Isbell, 5 Texas Civ. App., 515. As to the purchaser of the apparent legal title being protected see Johnson v. Newman, 43 Texas, 642; Hill v. Moore, 62 Texas, 612; Cameron v. Romele, 53 Texas, 241; Edwards v. Brown, 68 Texas, 334; Patty v. Middleton, 82 Texas, 586.

Upon the first question propounded we respectfully submit that Baker's senior deed took the title unless the creditor, Shepherd, had his junior lien fixed, completed, or established at a time that he had no actual or constructive notice of Baker's title. The general rule is that the oldest conveyance takes the property. The statutory exception to the rule is, that a bona fide lien creditor or subsequent purchaser will be protected and may have the senior conveyance postponed upon proof that he parted with value, without notice of said unrecorded senior conveyance. That the burden of proof is upon the party claiming the benefit of the exception to the general rule is too well established to require serious consideration at this late day.

Rogers v. Pettus, 80 Texas, 426; Hamman v. Keigwin, 39 Texas, 42; Jackson v. Waldstein, 10 Texas Civ. App., 156; Illies v. Frerichs, 11 Texas Civ. App., 575; Barnes v. Jamison, 24 Texas, 364; Millican v. Millican, 24 Texas, 444; McAfee v. Wheelis, 1 Posey U. C., 71.

The unrecorded deed is good between the parties. The grantee then has dealt with the grantor, and paid the consideration for the land upon the faith of the effectuality of his title and that it will not be swept from him by liabilities contracted by the grantor. Why, then, does he not occupy as favorable a position as the general creditor? If he does, and we think it can not be doubted, the record of his deed, or notice to the creditor before any specific right of the latter has attached to the land, should operate for his effectual security. Bailey v. Tindall, 59 Texas, 540; McKamey v. Thorp, 61 Texas, 648; Overstreet v. Manning, 67 Texas, 659; Bank v. Mortgage Co., 24 S. W. Rep., 691.

We must say that we are wholly unable to see what bearing the second question has upon the case. The intervener, Hamman, stood in Baker's shoes. If Baker's title was good when recorded, against Shepherd's still unrecorded junior mortgages, surely Hamman took all that Baker or his heir could convey, whether he had notice of the subsequent record of the mortgage or not. Baker's rights were fixed by his deed and the record of it, and the subsequent record of Shepherd's mortgage could not work a forfeiture of his title or even a postponement of it, and it matters not whether Hamman, the purchaser of this title, had all the actual and constructive notice that could be given him; he would not be separated from the older and better title of Baker. It has been repeatedly held that a purchaser under a judgment or other lien would be protected, although he had full notice, provided the lien creditor had no notice at the time his lien was fixed. Wallace v. Campbell, 54 Texas, 90; Frazier v. Thatcher, 49 Texas, 30; Mainwarring v. Templeman, 51 Texas, 211; Calvert v. Roche, 59 Texas, 465; Russell v. Nall, 2 Texas Civ. App., 63; Moore v. Johnston, 34 S. W. Rep., 771, and a number of others.

This brings us to the main question in the case,—was Shepherd such a creditor at the date of the execution of his deed of trust that would entitle him to postpone the older title of Baker? and this is involved in the second question asking this court's construction of articles 4985, 4986, and 4988, Paschal's Digest. Why the court omitted article 4983 we are unable to conceive. This omitted article, using plain and unmistaken English, says that "no deed, conveyance, lien, or other instrument of writing shall take effect as regards the interests and rights of third parties, until the same shall have been proven and presented to the court, as required by this act for the recording of land titles."

We think it clear that these articles of the statute then in force settle the question in the negative as to whether Shepherd had a lien upon the land in controversy when Baker's title was recorded in 1858. Then the further question arises, if he was not a lien creditor, but a general creditor without lien, would he, under the statute, be entitled to have

Baker's prior deed postponed to his right to collect his debt by sale of the land? That he would not, is firmly settled by numerous decisions of our Supreme Court. Ayres v. Duprey, 27 Texas, 607; Bailey v. Tindall, 59 Texas, 540; Overstreet v. Manning, 67 Texas, 659; Bank v. Mortgage Co., 24 S. W. Rep., 691.

Even if this was not the law appellee could not have Baker's title postponed, because he failed to show that he parted with anything of value when the mortgage was executed; it may have been executed for an antecedent debt. Ingenhuett v. Hunt, 39 S. W. Rep., 310; Spurlock v. Sullivan, 36 Texas, 516.

*L. B. Moody,* for appellee.—An unrecorded deed is void against the rights of a creditor who lends money and takes a mortgage upon the land without notice of such deed, and the burden of showing that he had notice of such unrecorded deed is upon the party claiming under such deed. Upon the point that the unrecorded conveyance from Thompson to Baker was void as against Shepherd, see Oldham & White's Digest, article 1730. Upon the point that the burden was upon appellants to show that Shepherd had notice of the prior unrecorded deed at the time he took a mortgage upon the land, see Barnett v. Squyres, 54 Southwestern Reporter, 241, which states the law as follows: "The decisions of this court have determined the rule to be otherwise, placing the burden upon the person asserting right under the unrecorded instrument to show notice to the creditor prior to the acquisition of his lien."

We are unable to understand where the appellants get the idea that Shepherd's mortgage did not become a lien upon the property and constitute him a secured creditor at the time it was made, as against all persons except subsequent creditors and purchasers. At the time of the transaction, article 4983, Paschal's Digest, had been superseded by article 4988, Paschal's Digest. Baker, under whom appellants claim, was neither a creditor nor subsequent purchaser, and all his transactions with Thompson concerning the land were prior to the execution of the mortgage to Shepherd. Shepherd became a secured creditor immediately upon the execution of the mortgage, regardless of whether or not the mortgage was ever placed of record. That this is true, is evident from the language used in article 4986, Paschal's Digest.

The appellants appear to be laboring under the mistaken idea that creditors and subsequent purchasers stand upon the same footing with respect to the burden of proof concerning consideration and want of notice and they cite numerous authorities in support of the proposition that a holder of a junior deed for land, in order to recover against the holder of the older title, must prove payment of the purchase money and absence of notice of the older conveyance. As counsel for appellants sagely remark, this latter rule is too well settled for discussion; but it is equally well settled that in the case of a creditor the rule is precisely the reverse, and the burden of proof is upon the party

claiming under the prior unrecorded conveyance, to show that the creditor was not a bona fide creditor, or that he had notice of the prior unrecorded conveyance. The distinction between creditors and subsequent purchasers is pointed out in Ayres v. Duprey, in 27 Texas, 606. See also Grace v. Wade, 45 Texas, 525; Simpson v. Chapman, 45 Texas, 564; Linn v. LeCompte, 47 Texas, 442; Wright v. Lassiter, 71 Texas, 644; Barnett v. Squyres, 54 S. W. Rep., 241.

We submit further, that the second certified question ought to be answered in the negative, because the mortgage was executed by Thompson, under whom appellants claim. Article 4985, Paschal's Digest, had been repealed long before the transaction in controversy took place. See Gregg v. Gregg, 33 Texas, 470. This question has no relation to the first certified question, but has an important bearing upon other branches of the case, concerning which no questions have been certified to this court. At the time the intervener claims to have purchased the land, the mortgage to Shepherd from Thompson, under whom the intervener claims, had been recorded in the county where the land is situated for more than thirty years.

WILLIAMS, ASSOCIATE JUSTICE.—This case comes up on the following certified statement and questions from the Court of Civil Appeals for the First District:

"On August 12, 1856, J. A. Thompson was the owner of 1476 acres of land in Montgomery County. On that date he executed and delivered to Wm. R. Baker a conveyance to the land in the form of a general warranty deed, reciting a cash consideration of $1600. This deed was not placed of record until April 6, 1858. On November 14, 1856, J. A. Thompson executed and delivered to one J. W. Henderson as trustee a deed of trust upon the land in question for the purpose of securing to one B. A. Shepherd the payment of a promissory note for $995.87. The power of sale was conferred upon the trustee in case of default in the payment of the note. Under this deed of trust the land was regularly sold by the trustee on April 6, 1858, for the purpose of paying the note and B. A. Shepherd became the purchaser. The trustee in pursuance of such sale executed and delivered to Shepherd a deed to the land so sold. The deed of trust and trustee's deed to Shepherd were not placed of record until 1870. On April 6, 1858, the day of the sale by the trustee, Baker placed his deed of record in Montgomery County, but the transcript does not disclose whether it was filed with the county clerk for registration before or after the consummation of the sale by the trustee. As to whether Shepherd took the deed of trust to secure an antecedent debt or was a purchaser for value, the record is silent except in so far as the instruments themselves may be proof of the truth of the declarations contained in them. The record is also silent as to whether B. A. Shepherd had actual notice of Baker's senior unrecorded deed either at the date of the note and deed of trust or at the date of the sale.

"So far as the record shows, the land has never been occupied by any of the claimants.

"B. A. Shepherd is dead and the appellee Mrs. M. A. Cochran is his sole heir.

"Wm. R. Baker is dead, and Wm. Baker Turner is his sole devisee.

"Mrs. Cochran brought two suits against Turner for the recovery of the land, one in Montgomery County and one in Harris County. By agreement, both suits were consolidated in Harris County and there tried.

"Hamman, the intervener, bought from Turner after the suits were instituted but before service of citation was had in either, and the testimony does not show that either the intervener or Turner had actual notice of their pendency at the date of Turner's purchase.

"The record is silent as to whether Hamman was a purchaser for value without actual notice of the claim of appellee Mrs. Cochran.

"First. Having shown the execution of the deed of trust, sale thereunder and deed from the trustee to her ancestor Shepherd, the death of Shepherd and her sole heirship, did it further devolve upon appellee to show affirmatively that Shepherd was a bona fide creditor and took the note and deed of trust without actual notice of Baker's senior unrecorded deed, or was the burden of proof upon Turner to show notice to Shepherd or that he was not a bona fide creditor?

"Second. In view of articles 4985, 4986, and 4988, Paschal's Digest, the first mentioned article requiring deeds of trust upon lands to be recorded within ninety days of their date, did the failure to record the deed of trust within the time prescribed render its subsequent record in 1870 ineffective as constructive notice to the intervener?"

In a supplemental certificate it is stated that the deed from Thompson to Baker was filed for record April 5, 1858.

1. The first question seems to assume that, in determining where the burden of proof rested, Shepherd is to be treated as a creditor and not merely as a purchaser as those terms are used in the registration laws. Pasch. Dig., art. 4988; Rev. Stats., art. 4640. The decisions of this court have settled two propositions respecting the burden of proof in such cases; first, that a junior purchaser of land, attempting to defeat the title of the holder of a prior unrecorded deed from the same grantor for the same land, has the burden to show, by evidence outside the recitals in his conveyance, that he purchased for valuable consideration and without notice of the previous conveyance; Watkins v. Edwards, 23 Texas, 433; Hawley v. Bullock, 29 Texas, 217; Rogers v. Pettus, 80 Texas, 425; second, that, as against a creditor whose lien has been fixed upon land by legal process against his debtor, the holder of a prior unrecorded deed from such debtor has the burden of proving notice of his right to such creditor at the time of or before the attaching of the lien. Linn v. LeCompte, 47 Texas, 442; Wright v. Lassiter, 71 Texas, 644. These cases were followed in Barnett v. Squyres, 93 Texas, 193.

The contention that the burden was on those claiming under the

unrecorded deed now in question is based upon the latter class of decisions, the subsequent mortgagee being treated as a creditor and not as a purchaser only.

Whether or not a junior mortgagee is to be properly so classed, under the law regulating registration of instruments affecting titles to lands (Revised Statutes, article 4640) for any purpose, is a question which admits of doubt under the decisions. In the case of McKeen v. Sultenfuss, 61 Texas, 325, the question was whether or not the holder of a junior mortgage given to secure an antecedent debt, who could not, therefore, be protected as a purchaser, was to be regarded as a lien creditor and to be protected as such, although he had parted with no consideration on faith of the security, and it was held that he was. In the subsequent case of Overstreet v. Manning, 67 Texas, 657, it was held that the term "creditor," as used in the chattel mortgage statute, means only such creditors as have acquired liens by proceedings at law, and that mortgagees and other lienholders by contract or act of the parties are on a different footing and must show some consideration other than an antecedent debt, in order to postpone the prior unrecorded deed. This was so modified in Furniture Company v. Hotel Company, 81 Texas, 141, as to include within the statute, as creditors, landlords whose liens arise by operation of law. The holding in Overstreet v. Manning was based upon a statute which made unregistered chattel mortgages void as against creditors, and also as against "subsequent purchasers and mortgagees or lienholders in good faith," thus expressly classifying mortgagees with purchasers and distinguishing them from creditors; and it might be said that this decision does not impair the force of that in McKeen v. Sultenfuss, which construed the statute concerning registration of instruments affecting the titles to land, in which the protected classes are mentioned merely as "creditors and subsequent purchasers for valuable consideration without notice." But the question suggests itself, does not the term "purchasers" include mortgagees, and does not the statute so classify them?

In a later case a like question arose under the Act of 1885 (article 3227, Revised Statutes) concerning reservations of title in the sale and delivery of chattels, such as had before been known as conditional sales, and converting them into chattel mortgages and making them, unless registered, void "as to creditors and bona fide purchasers." It was held that such instruments, although unregistered, created valid liens, as between the parties, and that subsequent mortgagees were not lien creditors within the sense of the statute, but were to be classed as purchasers; and, in order to postpone the prior lien to their mortgage, antecedent debts, to secure which the mortgage had been given, were not a sufficient consideration. Bowen v. Wagon Works, 91 Texas, 385. Justice Denman, after reviewing previous decisions, said: "The logic of these decisions would seem to include within the term 'creditors' all persons whose claims are, upon certain conditions, charged by law as specific liens upon certain property, such as

holders of attachment, execution, judgment, landlord, and mechanic's liens, and to exclude therefrom all others."

The language of the statute here construed, so far as it influences the immediate question, is in effect the same as that construed in McKeen v. Sultenfuss.

Neither of these cases involved the question as to the burden of proof, but all of them treated of the substantive rights of the parties where all of the facts were made to appear. The questions so decided are not now before us, and it is not intended to express any opinion as to the effect of the later decisions upon the case of McKeen v. Sultenfuss. The only bearing which these cases have upon the question of the burden of proof arises from the distinction which the two classes of cases first cited have made between creditors and purchasers. Whether or not there is solid ground for this distinction is a question about which differences of opinion might exist and which we are not called upon to discuss.

The second rule stated as to burden of proof has not been applied to any cases arising under the statute except those in which the right opposed to the claim under the unrecorded deed was that of a creditor who had established, as against the grantor in such deed, a lien upon the property by process of law, and, since we can discover no reason why a junior mortgagee, in this respect, should be regarded as holding a stronger position than that of the holder of a junior deed, we can not assent to the contention that a different rule as to burden of proof applies to them. The reason of the rule, as between two holders of deeds from the same party, is that the first deed has passed the legal title to the grantee therein, and upon this he is entitled to stand and to recover until the facts prescribed by law to defeat it have been made to appear (McAlpine v. Burnett, 23 Texas, 652); and this reason certainly operates with as much force against a junior mortgagee as against a junior vendee. This would hardly be questioned were it not for the difference made by the decisions referred to between purchasers, and creditors with liens fixed by law. If there is any reason which distinguishes the case of the junior purchaser from the classes of creditors mentioned, it equally distinguishes from them the case of a junior mortgage.

We therefore conclude that the burden of proof was upon those claiming under the junior mortgage to show the facts which would give it precedence over the prior deed.

2. Article 4985, Paschal's Digest, which was the third section of the Act of May 15, 1838, "to provide for the foreclosure of mortgages," was not in force when the mortgage in question was given. It was superseded by the amendatory Act of February 5, 1840, on the same subject, and by the fourth, fifth, and thirteenth sections of the act of same date "concerning conveyances." The third section of the Act of 1838 required that mortgages be recorded within ninety days from the passage of the act or from the date of the mortgage, and provided that "no mortgage shall take lien" unless so recorded. The

amendatory act provided a different rule, viz., "that all mortgages shall be recorded as heretofore, but the lien created by the making of mortgages shall not be lost nor destroyed as between the parties to it if the mortgagee shall fail to have it recorded within the time prescribed by law." If it could be held that this, by itself, left in force the requirement that the record be made within ninety days, and that if made afterward it would be ineffectual as notice, such holding is excluded by the other statute referred to. The fifth section of the latter act required clerks to admit to record "at any time" any "conveyances," and the conveyances meant are defined in the fourth section, which is the same as article 4988, Paschal's Digest, and includes mortgages, and provides that such as are not recorded shall be void as to the classes of persons named, but valid as between the parties and their heirs and as to all subsequent purchasers with notice or without valuable consideration. Section 13 makes the delivery of such instruments to the clerk notice from the time of such delivery.

These various provisions left no part of section 3 of the Act of 1838 affecting this case in force, and the law as fixed by them has been in substance the same ever since. Pasch. Dig., arts. 5004, 5012, 5013, 5014. The same decision of this question was made in Price v. Cole, 35 Texas, 471, and Gregg v. Gregg, 33 Texas, 463, and, upon this point, we think those decisions are correct.

The failure to record the mortgage within ninety days does not impair the effect of the record as notice from the time it was made.