### H. M. WHITAKER ET AL. V. AMANDA FARRIS ET AL.

Decided March 1, 1907.

**1.—Unrecorded Deed—Junior Purchaser—Burden of Proof.**

The burden of proof is upon a junior purchaser of land to show that he had no notice of a prior unrecorded deed to the same land and that he paid a valuable consideration therefor.

**2.—Same—Sheriff's Sale—Burden of Proof.**

The burden of proof is upon the holder of a prior unrecorded deed to show that the plaintiff in execution under which land is sold had notice of such prior deed at the time the execution was levied. Notice to the purchaser at the execution sale would not affect his title if the plaintiff in execution had no notice at the time he acquired his judgment or execution lien.

**3.—Same—Notice of Unrecorded Deed.**

Although it appeared from the mortgagor's deed to the land in question that there were 2,406 acres in the tract, still a statement in the mortgage that the amount of land owned by him was about 1,700 acres was sufficient to charge the mortgagees with notice that a part of the original tract had been sold by the mortgagor, and in a subsequent partition of the land between the mortgagor and mortgagees the prior conveyances made by the mortgagor should first be deducted from the original tract and only the remainder partitioned.

Appeal from the District Court of Anderson County. Tried below before Hon. John J. Wood, Special Judge.

*Robertson & Whitaker*, for appellants.—The judgment of the District Court of Anderson County in cause No. 1110, G. W. Copeland et al. v. Henry Wright, to partition the Wilson Ewing survey, rendered on the 15th day of October, 1860, carried with it a judgment for costs against Copeland, which, by the terms of the law then in force, fixed a lien upon Copeland's interest in this land, superior to subsequent conveyances made by him to W. P. Brittain and J. D. Stovall in 1862 and 1863; and therefore the acquisition of this land by Bonner & Bonner, under a sheriff's deed, made by virtue of a valid execution issued on this judgment, gave them a title superior to that held by Brittain and Stovall and those claiming under them. Black v. Epperson, 40 Texas, 186; Cravens v. Wilson, 48 Texas, 338; Sessums v. Botts, 34 Texas, 335, 348; Moore v. Letchford, 35 Texas, 209; Cravens v. Wilson, 35 Texas, 53; Williams v. Murphy, 36 Texas, 173.

When Bonner & Bonner reconveyed to G. W. Copeland by deed of the 29th of March, 1876, one-half interest in the land, so as aforesaid acquired by them, such purchase by Copeland inured to the benefit of his prior vendees Brittain and Stovall, or those claiming under them, and Copeland, or the complainant defendants, who claim through a deed from Mrs. Copeland as executrix of G. W. Copeland,

took only such portion as remained after deducting from the portion conveyed to Copeland by Bonner & Bonner, the amount of the previous conveyances to Brittain and Stovall. After-acquired title of vendor inures to benefit of vendee. Mays v. Lewis, 4 Texas, 44; Holmes v. Johns, 56 Texas, 50.

The deed from G. W. Copeland to Bonner & Bonner, of date November 23, 1874, which is evidently confirmatory of the sheriff's deed above mentioned, is a conveyance of the interest of Copeland, consisting of 2,567½ acres, in the Wilson-Ewing league survey, and is not a mere quit-claim, or conveyance of a chance of title. The use of the terms, "right title, interest, claim or demand I, the said Copeland, have in and to the same," applies to the whole league, which is described in the deed, and is not intended to limit the character of the title or the amount of land conveyed, to wit 2,567½ acres, which is his interest in the league. Such being the character of the deed, Copeland's special covenant contained therein (which covenant would also, if not expressed, be implied by statute) warranted that he had not prior thereto conveyed the same estate, or any right, title or interest therein to any other person.

From such a deed, and especially the covenant therein, it would necessarily follow, that, when Copeland reacquired a one-half interest in said land from Bonner & Bonner by deed of March 29, 1876, he took such one-half interest charged with and to be diminished by, the conveyances made by him prior thereto to Brittain and Stovall, and in this partition between plaintiffs, claiming under Bonner & Bonner, on the one part, and complainant defendants claiming under Copeland, on the other part, the Copeland share would be charged with the amount of land covered by the prior conveyances and diminished to that extent. Garrett v. Christopher, 74 Texas, 453; Lewis v. Terrell, 26 S. W. Rep., 754; Moore v. Swift, 67 S. W. Rep., 1065; Lindsay v. Freeman, 83 Texas, 259; Bedford v. Rayner Cattle Co., 35 S. W. Rep., 933.

*John C. Walker* and *Baker, Botts, Parker & Garwood,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit of trespass to try title and for partition brought by the appellants against the appellees. The land involved is a tract of 2,406 acres, a part of the Wilson Ewing survey in Anderson County.

All parties claim title under G. W. Copeland, who, prior to October 15, 1860, acquired title to an undivided 2,567½ acres in said Ewing survey. On the above mentioned date Copeland filed suit for partition in the District Court of Anderson County against his co-owner of said survey. A final judgment was rendered in this suit on April 20, 1866, approving the report of the commissioners of partition who had been theretofore appointed by the court to make partition of said survey. This judgment set aside to Copeland the tract of 2,406 acres of land involved in this suit, and further adjudged the costs of the suit against each of the parties in proportion to the interest of each in the land thereby partitioned. During the pendency of this suit Copeland conveyed to W. P. Brittain 400 acres and to J. D. Stovall 530

acres out of his interest in the Ewing league. The deed from Copeland to Brittain was executed February 11, 1862, and conveys an undivided 400 acres. The deed to Stovall bears date September 29, 1863, and conveys a specific tract of 530 acres described by metes and bounds. The Brittain deed was never properly recorded because of a defective acknowledgment, and it does not appear from the record when the Stovall deed was recorded. The appellees, who claim under the Stovall deed, have title by limitation to the 530 acres in addition to the title acquired through said deed. One of the appellees who claimed under the Brittain deed showed title by limitation to 200 acres, but no limitation was shown by the appellee claiming the remaining 200 acres sold to Brittain.

On the 18th day of March, 1868, Copeland executed a mortgage in favor of the firm of Bonner & Bonner to secure said firm in the payment of a note for $750 in their favor executed by Copeland. This mortgage conveyed all of the mortgagor's interest in the Ewing league, which is stated in the mortgage to be about 1,700 acres. On November 20, 1868, an alias execution was issued against Copeland on the judgment for costs rendered against him in the partition suit before mentioned. This execution was levied on 2,567½ acres in the Ewing league belonging to Copeland and at a sale under said levy made on March 2, 1869, Bonner & Bonner became the purchasers and the sheriff executed to them a deed conveying all the right, title and interest of Copeland in and to 2,567½ acres out of the Ewing league, which league was described in the deed by metes and bounds.

On November 23, 1874, Copeland conveyed to Bonner & Bonner all his right, title and interest in 2,567½ acres of land in the Ewing league. No description of the 2,567½ acres is given in this deed, but the field notes of the league are set out therein. The deed recites that the land is conveyed for a valuable consideration, but does not further state what the consideration was. It contains the following habendum clause and covenant of warranty:

"Together with all and singular the rights, tenements, hereditaments and appurtenances to the same belonging or appertaining, to have and to hold all and singular the premises above described unto the said M. H. Bonner, F. W. Bonner and T. R. Bonner, under the firm name and style of Bonner & Bonner, their heirs and assigns in fee simple forever; and I, the said Geo. W. Copeland, for myself and heirs do hereby covenant to and with the said Bonner & Bonner their heirs and assigns to warrant and forever defend all and singular the rights, title, and interests, claim and demand which I have in and to said land and premises against the claims of all persons whomsoever claiming the same through, by and under me."

On the 29th day of March, 1876, G. W. Copeland by deed which recites the payment of a valuable consideration to him (not stated) conveys to the same parties (Bonner & Bonner) "2,406 acres of land, part of the Wilson Ewing survey." (Then follows field notes the same as contained in plaintiffs' petition and further describing it as the same land set apart to Copeland by the decree of partition above mentioned), "To have and to hold the same, together with all and singular the rights, hereditaments, appurtenances and improvements unto the same

belonging or in anywise appertaining, unto them the said Bonner & Bonner their heirs and assigns in fee simple forever. The object and intention of this instrument is to release and quit-claim unto the said Bonner & Bonner all the right, title and interest and claim which I have in and to the said above described land."

On the same day, the 29th day of March, 1876, Bonner & Bonner by deed which recites the payment of a valuable consideration (not stated) convey to Copeland an unequal (evidently meaning equal) undivided one-half (½) interest in and to 2,406 acres of land described as set apart to Copeland by the decree of partition above mentioned and "conveyed to us by said Copeland by deed of even date herewith . . . . . . To have and to hold the same together with all and singular the rights, tenements, appurtenances and improvements unto the same belonging unto him the said Geo. W. Copeland his heirs and assigns in fee simple forever. The object and intention of this instrument being to release and quitclaim unto the said Copeland one-half of all our right, title, interest and claim in and to the said land and premises."

There was no evidence of the dealings between Copeland and Bonner & Bonner other than what is shown by the mortgage and deeds above mentioned.

It was not shown that the plaintiff in the execution under which the 2,567½ acres of land was sold and purchased by Bonner & Bonner in 1869 had any actual notice at the time the execution was levied or prior thereto that Copeland had made the conveyances to Brittain and Stovall before mentioned, and the only evidence tending to show actual notice to Bonner & Bonner of these conveyances was the recital in the mortgage before mentioned, that the interest of Copeland in said league amounted to about 1,700 acres. There was no evidence upon the issue of payment by Bonner & Bonner of any consideration for the several conveyances to them other than the recitals in said instruments of conveyance.

Appellants have acquired title to all of the 2,406 acres of land which was owned by Bonner & Bonner after the execution and exchange of deeds between said firm and G. W. Copeland on March 29, 1876, and the appellees, other than those who claim under the Brittain and Stovall deeds, have title to all of said tract which was owned by Copeland after said exchange of deeds. The title of the appellees claiming under the Brittain and Stovall deeds to the interest in the land conveyed by said deeds is not questioned, but the issue is whether such interests shall be taken from the whole tract or be charged to the half interest in the tract conveyed by Bonner & Bonner to Copeland on March 29, 1876. The trial court held that appellants as vendees under Bonner & Bonner took title to only one-half the 2,406-acre tract remaining after deducting the land sold to Brittain and Stovall, and rendered judgment accordingly.

Under appropriate assignments of error appellants assail this judgment upon the ground, that upon the facts above stated Bonner & Bonner acquired title to the whole of the 2,406 acres by the sheriff's sale and deed of March 2, 1869, and also by the deed from Copeland of November 23, 1874; that the only purpose and effect of the deed from Copeland of March 29, 1876, was to correct the description in

the deeds just mentioned; and that the title to the half interest in the land thereafter conveyed to Copeland by Bonner & Bonner passed to Brittain and Stovall by virtue of the granting clauses in the deeds previously made them by Copeland, and the latter therefore only took title to one-half of the land less the number of acres previously sold by him to Brittain and Stovall.

There being no evidence showing that Bonner & Bonner purchased without notice of the prior deeds to Brittain and Stovall or that they paid value for the land, as junior purchasers from Copeland they acquired no title as against Brittain and Stovall by the deeds from Copeland. Watkins v. Edwards, 23 Texas, 443; Hawley v. Bullock, 29 Texas, 217; Rogers v. Pettus, 80 Texas, 425.

A different question, however, is presented when we come to consider the effect of the execution sale and the sheriff's deed. The unrecorded deeds of Brittain and Stovall were void as to creditors who acquired a lien upon the property by legal process unless such creditors had notice of said deeds at the time their lien was acquired. There is no evidence that the plaintiff in the execution under which the land was sold had any notice of the prior deeds at the time the execution was levied, and the burden of showing such notice would be upon those claiming under said deeds. Notice to the purchaser at the execution sale would not affect his title if the plaintiff in execution had no notice at the time he acquired his judgment or execution lien. Linn v. Le Compte, 47 Texas, 442; Wright v. Lassiter, 71 Texas, 644; Barnett v. Squyres, 93 Texas, 193; Turner v. Cochran, 94 Texas, 480. It follows from these established rules of law that if the description in the levy and the sheriff's deed is sufficient Bonner & Bonner acquired title to all of the land by said levy and sale.

There is no statement of facts in the record, and the conclusion of facts filed by the trial judge does not purport to copy or to set out the exact description contained in the levy and the sheriff's deed, and there seems to have been no question raised on the trial as to the sufficiency of said description. Under these facts we would not be justified in holding that the descriptions are insufficient, but as they appear in the findings of fact their sufficiency may well be doubted. The levy seems to have been upon an undescribed tract of 2,567½ acres in the Ewing league, and at the time it was made the only land held by the defendant in execution in said league was a tract of 2,406 acres. As before stated, we do not think the question of the sufficiency of the description to pass title by a levy and sheriff's deed is properly before us for decision and therefore it is not passed upon.

The trial court concluded that whatever might be the effect of the previous deeds to Bonner & Bonner the transaction between them and Copeland evidenced by the deeds of March 29, 1876, was in effect an agreement to divide equally what remained of the 2,406-acre tract after deducting the land sold to Brittain and Stovall, and we can not say that this conclusion should not be sustained.

The statement in the mortgage from Copeland to Bonner & Bonner that the amount of land owned by him in the Ewing survey was about 1,700 acres was, we think, sufficient to charge them with notice of his previous conveyances to Brittain and Stovall. The deed of March 29,

1876, is a quitclaim and from the recitals in the two deeds between said parties executed on that day we think it may be fairly inferred that they were dealing only with that portion of the land which had not been previously sold to Brittain and Stovall. Bonner & Bonner knew that the land had been sold to Brittain and Stovall prior to their purchase at sheriff's sale; they also knew that the description in their previous deeds was inaccurate. Under these facts it is not unreasonable to presume that in order to acquire perfect title to one-half of the land remaining after deducting the Brittain and Stovall tracts they were willing to reconvey to Copeland the other one-half of such remainder and that this was the purpose and intent of the parties in making said deeds.

No error is shown by the assignment complaining of the judgment proportioning the costs of the suit between the parties and the assignment is overruled.

What we have said disposes of all of the questions raised by the various assignments. The views above expressed require the affirmance of the judgment of the court below and it has been so ordered.

*Affirmed.*

Writ of error refused.