This is an action to recover certain lots in the city of Laredo, and in the alternative for judgment for $10,000 against John H. Davis and S. M. Barlow, the receiver of his estate, instituted by appellant against her husband, Alfred C. Markley, Joseph C. Martin and his wife, Minnie B. Martin, John II. Davis, and S. M. Barlow, his receiver. It was alleged that the land sued for is the separate estate of appellant, and that her husband refused to join in the suit; that on September 9, 1915, appellee was lawfully seised and possessed of the property in her own separate right, and on that date Alfred C. Markley executed a deed of conveyance of said land to John H. Davis, who knew it was her separate property; and that said Davis on September 21, 1915, executed a deed to the land to Joseph C. and Minnie B. Martin, who were not innocent purchasers. The cause was tried without a jury, and judgment was rendered in favor of appellant as against Davis and the receiver in the sum of $4,687.50, and in favor of Martin and wife for the property.
The findings of fact of the trial judge are as follows, certain unnecessary words being eliminated:
"(1) The property involved in this suit, to wit, lots 1, 2, and 3, block 126, of the Western Division of the city of Laredo, Webb county, Tex., was purchased by plaintiff from James Tucker and wife on the 25th day of November, 1872; that James Tucker and wife executed a deed conveying said property to plaintiff, which was duly recorded in the deed records of Webb county, Tex., on May 10, 1873, and recorded in volume 4, page 628, of the Deed Records of said county; that the conveyance was made to `Rebecca C. Markley,' but contained no clause limiting the estate granted to her separate use and benefit.
"(2) The plaintiff paid the purchase price of said property out of her separate means with funds given her by relatives.
"(3) On the 9th day of September, 1915, the defendant A. C. Markley, the husband of plaintiff, executed a deed whereby he conveyed said property, with other property, to the defendant John II. Davis, for a recited consideration of $17,000, which covered amounts A. C. Markley owed and was due the Milmo National Bank, Jno. H. Davis, and Mrs. _____, of San Antonio, said Davis canceling amount due him, and assuming said indebtedness due the other parties in consideration of said conveyance of the town lots and the farm, which deed was recorded in the deed records of Webb county, Tex., September 10, 1915, and recorded in volume 65, page 144, of the Deed Records of said county; that plaintiff did not join in the execution of said deed.
"(4) On September 21, 1915, the defendant John H. Davis made, executed, and delivered to the defendants Joseph C. Martin and wife, Minnie B. Martin, a deed of conveyance conveying to them the property involved in this suit, in consideration of $3,750 cash paid; said deed was recorded in the deed records of Webb county, Tex. *Page 124 
"(5) At the time of the conveyance of said property by A. C. Markley to John H. Davis, the said Davis had information given him prior to said time that property had been purchased by Mrs. Rebecca C. Markley with her own separate funds, and that she claimed to own the same in her own right.
"(6) For several years prior to the 9th of September, 1915, plaintiff rented to some one said lots, and said tenant had actual possession of said property; that a part of the same was inclosed by a fence, and used, occupied, and enjoyed by said tenants, and that plaintiff through her agents collected the rents from said property; that lot No. 8 of the same block was inclosed by a fence and occupied by a tenant of plaintiff; that lots 1, 2, 3, and 4 of block 199 were also occupied by plaintiff's tenants, and the rent on all said property for the month of September, 1915, was collected by plaintiff's agent and paid to her; that plaintiff's husband, A. C. Markley, never at any time exercised control over said property, or collected rents therefrom, and never claimed ownership thereof against plaintiff until September 9, 1915.
"(7) At the time of the purchase of said property by the defendants Joseph C. Martin and Minnie B. Martin neither of them had notice of the claim of said property by plaintiff, and that plaintiff claimed that she purchased the same with her separate funds, except such notice as may be presumed from the fact that said property was in the possession of said tenant, who had arranged with plaintiff to use and occupy said lot for so much per month. In purchasing said property, the defendant Joseph C. Martin acted for himself, and as agent for his wife, Minnie B. Martin; that said Joseph C. Martin knew that said property was in the possession or occupied by a tenant who was the tenant of plaintiff, but that said Martin had no information that said tenant was not the tenant of both A. C. Markley and plaintiff, Rebecca C. Markley, the wife of A. C. Markley; that he made no inquiry of said tenants as to the nature of their claim or occupancy of said property, or under whom they held, or of any one else.
"(8) The value of said property on September 23, 1915, was $3,750, and that its present value is $4,687.50."
The facts found by the trial court are not attacked by either party, and are adopted as the conclusions of fact of this court.
The only question presented by the record for determination by this court is as to whether the possession of appellant was sufficient to put appellees Martin and wife upon inquiry as to the title of Davis to the property. Davis admitted that he knew that the property was the separate estate of appellant, and there was no change of possession of the property before the Martins purchased it from Davis. It was still being held by appellant, to whom it belonged as her separate estate. Did the duty devolve upon the Martins to seek information of the tenants as to the person under whom they were holding at the time Davis sold to them? If that duty did rest upon them, they, doubtless, by such inquiry would have ascertained that the persons in possession were the tenants of appellant, and not the tenants of A. C. Markley. The property belonged to appellant as her separate property, but, as the deed did not so state, the courts of this state hold that she would be estopped to claim the land as against innocent purchasers, or, in other words, that the presumption would arise that the property was community estate.
Joseph C. Martin had known the land all his life, he knew that the deed was executed to Rebecca C. Markley, and he knew that she managed and controlled it through an agent. He was the assessor of taxes for Webb county, and knew that for years the property had been rendered for taxation by appellee. He had sworn appellant's agent, who rendered the property for taxation, to inventories of the property, which was listed in the name of appellant. He endeavored to evade the testimony as to the inventories by saying he did not read them, but it was his duty to know, and he must have known, whose property was rendered for taxation. He said "R. C. Markley" might have been a man, but stated: "Well, I knew Mrs. R. C. Markley, but I did not know she claimed the property." He did know, however, that a deed was on record that conveyed the property to her, he knew that she rendered the land for taxation, he knew that persons were in possession of the property when he bought it, and yet he made no inquiry as to her rights in the property. He knew that the deed from A. C. Markley to Davis created a hiatus or break in the title which for all time might create inquiry and doubts as to the status of the title, and which break in the title should have caused Martin to inquire of Davis as to such seeming defect, who, we must presume, would have told him that it was the separate estate of appellee.
If possession of the property devolved upon the Martins the duty of inquiry as to the authority upon which the occupants were holding it, then the Martins were not innocent purchasers; for such inquiry, properly prosecuted, would have inevitably led to the discovery that the property was the separate estate of appellant.
We are aware of the fact that the courts of Texas hold that property acquired by purchase, whether the conveyance be in the name of the husband or of the wife, or in the names of both, is prima facie presumed to belong to the community. Of course, such presumption may be rebutted by proof that it was bought with the separate funds of either husband or wife. It is also held that the mere fact that a conveyance is made to a married woman does not put a purchaser upon inquiry. However, while the deed, standing alone, would raise the presumption that the property was community, still that presumption might be destroyed by circumstances, taken with the fact that the deed, contrary to the usual custom as to community property, was made to the wife. This was not only true, but the wife rendered it for taxation, rented it, and collected the rents herself. When Davis bought she was in *Page 125 
possession of the property through her tenants, and was in such possession when Davis sold to the Martins. But outside of all this, the Martins were put upon notice by the possession of the premises by certain persons, and it was their duty to inquire into such possession.
In the case of Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258, it was held:
"The proposition that the possession must be inconsistent with that of the person holding the legal title, applied as here attempted, would entirely destroy the doctrine of notice by possession. A purchaser, without troubling to inform himself as to the claim of the possessor, might assume any possession to be consistent with the legal title of record, as that the possessor was holding as tenant of or otherwise in subordination to the holder of such title. But the law permits him to make no such assumption, and the reason is that the possession puts him on inquiry, which he must prosecute with reasonable diligence."
As said in that case, so in this it is evident that inquiry would have revealed the true state of the title, and would have shown that the lots were the separate property of appellant. The Ramirez-Smith Case is cited with approval in Collum v. Sanger, 98 Tex. 162, 82 S.W. 459, 83 S.W. 184, and the court held:
"We think it a safe and salutary rule to require of a prospective purchaser of land to ascertain whether any other be in occupancy of it, and, if there be such possession, to go to the possessor and ascertain the nature and extent of his claim. Possession is evidence of title, and it seems to us that common prudence and common honesty demand this course. If so, the possession should be notice to him, and if notice to a purchaser it is notice to a creditor."
The propositions in the two cases cited are the law of Texas, and they have never been questioned in any case.
The trial judge found that Joseph C. Martin knew, when he purchased the land, that it was in possession of tenants, but did not know whether they were tenants of appellant or of her and her husband, and made no effort to ascertain. The possession might not have been inconsistent with the claim of Davis, but the Martins had no right to assume that fact, but they were put on inquiry by that possession which they should have prosecuted with reasonable diligence. Having failed to make such inquiry and investigation, they cannot claim to be innocent purchasers because they thought the deed to appellant conveyed the land to the community. The tenants were in possession, not as the tenants of Davis, the vendor of the Martins, and their possession was utterly inconsistent with and antagonistic to the title of Davis. This fact alone denied the Martins the status of innocent purchasers. Appellant was in possession of the property adversely to Davis, and Joseph C. Martin had no right to conclude that her possession, or even that of her and her husband, was consistent with the title of Davis. On the other hand, it was adverse thereto. No matter who held the possession of the property, it was adverse to the claim of Davis, and the Martins are not innocent purchasers.
The finding of fact that Joseph C. Martin knew that the land was occupied by tenants, and that he made no inquiry as to the nature of their occupancy of the land, was a finding that precluded a recovery on the part of the Martins. As said by the Supreme Court in Moore v. Chamberlain, 195 S.W. 1135:
"When the plaintiff in error purchased the land from the trustee, it was in possession of the tenants of the Chamberlains. This placed him upon inquiry, as a matter of law, as to whether the deeds from the Chamberlains to Carson and from Carson to Trammell were absolute, or were intended only as mortgages. There being no finding that he exercised any diligence by making inquiry, the possession of the tenants constituted actual notice to him that the deeds were intended as mortgages."
The Ramirez-Smith Case and the Collum-Sanger Case are cited as authority for the proposition.
Appellant, under the statute, article 4621, had "the sole management, control and disposition of her separate property, both real and personal," and she had the absolute right to lease her property and collect the rents independent of her husband; and while under former laws before she was clothed with such power, the deed to the wife would not excite inquiry, yet when she not only has such deed, but renders the property for taxation in her own name, rents it in her own name, and collects the rents in her own name, and pays the taxes in her own name, all these circumstances should put any reasonable man on notice of her claim. She can hold property adversely to all others under that statute and acquire title thereto. It is not necessary to say whether this adverse holding could prevail against her husband. We think that under the statute herein cited her possession and control should give notice that she is claiming the property. To hold otherwise would be in the face of article 4621, Revised Statutes, which clothes the wife with equal rights with her husband as to the control, management, and disposition of her property.
In the case of Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S.W. 174, which is relied on by appellees as sustaining their judgment, after discussing notice arising from the record of a deed, it was held:
"It is equally well settled, however, that an open, exclusive, and visible possession maintained by the holder of the unrecorded deed when the right of the creditor attaches is notice of the right under which it is held. This is so for the reason that one who seeks to acquire an interest in or with respect to land is expected, in the exercise of common prudence, to learn of a possession held by others than him, whose rights he purposes to acquire, and to make inquiry of the possessor as to the nature of the claim under which he holds. * * * Having such opportunities, of which prudence dictates that he shall avail himself, one who has omitted to do so will not be heard to deny that he had notice of a fact of the existence of which he was thus put upon inquiry." *Page 126 
This is directly in line with the Ramirez-Smith Case and the Collum-Sanger Case, which are fully approved and their doctrine reiterated in the latest utterance of the Supreme Court on the subject in the Moore-Chamberlain Case, which was rendered on June 20, 1917. There are some expressions in the Grocer Co. v. Burks Case that might be construed as being somewhat in conflict with the three decisions mentioned, to the effect that inquiry as to the possession is not required unless the record or some other information exists that would excite inquiry. Under the facts of that case, it was held that, although Mrs. Burks had possession of the land, there was nothing to show that it was hers rather than her husband's property. She was not residing on the land and had no tenant on it. In the case now before this court, however, appellant was in possession by her tenants. Martin knew she rendered the property for taxation and paid the taxes thereon; he knew she was exercising the right of "control, management, and disposition" of the property given by statute to married women. He knew enough to make any reasonably prudent man inquire into the possession which he knew was not that of his vendor.
The facts in the case of Kelly v. Blakeney, 172 S.W. 770, decided by this court, differentiate it sharply from this case. The possession in that case was accounted for by a lease of the land, which was on record, and there was no circumstance tending to show that the tenant had renounced his tenancy and was claiming possession under another right.
The case of Houston Oil Co. v. Griggs, 181 S.W. 833, is not one in which notice by possession was involved, but was as to notice given that a grantor was a married woman by the word "Mrs." being used before her name in the certificate of acknowledgment. The case of King v. Lane,186 S.W. 392, was decided on facts very different from those under consideration, although it was decided without reference to the case of Collum v. Sanger. It is not in point in this case. The last expression of the Supreme Court fully sustains the Collum-Sanger Case.
The judgment will be reversed, and judgment here rendered that appellant recover the land for which she sued and all costs in this behalf expended.
 On Motion for Rehearing
In this case a rather anomalous state of facts has arisen, in that appellant seeks to have judgment rendered in favor of the Martins as against John H. Davis on his warranty, and appellees contend that this cannot be done because the facts as to the warranty are not sufficient and the value of the property is a disputed fact. It was alleged in the answer of J. C. and Minnie B. Martin that on or about September 21, 1915, they paid John H. Davis $3,750 for the land, and Davis not only did not deny that allegation, but specifically adopted "that portion of said answer which alleges that the said J. C. Martin and Minnie B. Martin are purchasers for value without notice of said lands involved in this suit." Martin swore that he "paid the amount mentioned in the deed" and that amount was $3,750 in cash. Davis admitted this in his testimony. What more could be asked? The former judgment herein rendered will be amended so as to give judgment in favor of J. C. Martin and Minnie B. Martin against John H. Davis for $3,750, with interest at 6 per cent. per annum from September 21, 1915, and costs as prayed for in the answer of the Martins.
The motion is overruled.