NEWMAN v. PHALEN et al.   (No. 1548.)

(Court of Civil Appeals of Texas. Amarillo. June 11, 1919. Rehearing Denied Oct. 8, 1919.)

1. VENDOR AND PURCHASER ⬤⟞242—RIGHT OF HOLDER OF UNRECORDED DEED OR CONTRACT AS AGAINST VENDOR'S CREDITOR.

In view of Rev. St. art. 6824, one holding an unrecorded deed or contract subject to registration has the burden of showing that a creditor of the grantor had notice of such instrument, or of facts sufficient to charge him with notice, at the time the creditor procured a lien on the land by virtue of the law, as by filing and indexing an abstract of judgment, as distinguished from a lien by contract.

2. VENDOR AND PURCHASER ⬤⟞232(8)—RIGHT OF HOLDER OF UNRECORDED DEED AS AGAINST JUDGMENT CREDITOR.

Open, exclusive, and visible possession of land, either through himself or his agent and employés, maintained by the holder of an unrecorded deed when the lien of the grantor's judgment creditor attaches by filing and indexing of an abstract of judgment against the grantor, is notice to the judgment creditor of the right under which the land is held.

Error from District Court, Sherman County; Reese Tatum, Judge.

Action by Emmet Phalen against Emma R. Newman and Arthur Ross, Sheriff. To review judgment for plaintiff, defendant Newman brings error. Affirmed.

W. I. Gamewell, of Dalhart, and C. F. Rudolph, of Stratford, for plaintiff in error.

Tatum & Strong, of Dalhart, and J. H. H. Stahl, of Stratford, for defendants in error.

HUFF, C. J. The defendant in error Phalen instituted this action against Emma R. Newman, plaintiff in error, and Arthur Ross,

---

sheriff of Sherman county, to remove the cloud from a half section of land in said county, the title to which was in Phalen cast thereon by a judgment lien obtained by filing an abstract of judgment and to enjoin the sale thereof by the sheriff by virtue of an execution then in his hands and issued on the judgment and out of the court rendering the same. The evidence in the record authorized a finding by the trial court that on the 23d day of February, 1917, defendant in error entered into a written contract with Foster & Cosby to purchase the land in question, paying at that time the sum of $200 cash as earnest money to be applied on the cash consideration, and agreeing that when he was furnished with an abstract showing a good merchantable title, together with a warranty deed, to pay the additional sum of $800 cash, and execute his notes for the amounts named and specified in the contract. Foster & Cosby executed their warranty deed to Phalen August 6, 1917, and acknowledged the deed on that date. The consideration named in the deed is the same as in the contract of February 23, 1917, that is, $8,800, to be paid $1,000 cash and the assumption of five notes to John Wallan for $704 each, executed by Foster & Cosby, and six notes in favor of Foster & Cosby executed by Phalen for $661.33 each, due in one, two, three, four, five, and six years, respectively. The deed and notes were delivered on the 22d day of August, 1917; the notes, however, bearing date August 6, 1917. The deed to Phalen was filed for record August 28, 1917.

The defendant in error, at the time he looked at the land, was a prospective purchaser, seeking investment in Texas land, and then resided in Wisconsin. Foster & Cosby were real estate brokers and showed him over the land and other lands. At the time of showing the land they were not the owners of it. The land in question suited defendant in error, and the land agents Foster & Cosby called upon another land agent, who it appears had the agency for the sale thereof, and entered into a contract with the other agent for the land, and thereupon entered into the contract with defendant in error, above mentioned. So soon as the contract was executed, defendant in error, with others, went on the land; that is, with the agent who had shown it to him, and a Mr. Boelow, formerly from Wisconsin. At that time defendant in error took possession of the land, or rather there appears to have been some sort of delivery performed on the land. At any rate, defendant in error employed Boelow to look after it for him and have it fenced and placed in cultivation, or part of it. The defendant in error then returned to Wisconsin to finish up his business and did not return to Texas until in September. In the meantime, Boelow employed men to break the land and plant a feed crop on the place for the defendant in error. A crop was planted in June, 1917, and also about the 15th day of July, 1917, he had a fence constructed which segregated this half section from other lands. It appears three sides of the land had a fence thereon, apparently erected by adjoining owners; but there was another line which was built under the direction of Boelow to segregate the land, one half of it being defendant's in error and the other half an adjoining landowner's, defendant in error paying for his half.

Prior to the contract on the 23d day of February, the half section was in a pasture and used for grazing purposes. The defendant in error, upon the rendition of the bills for breaking the land, planting the crop, and building the fence, paid the same by sending the money to Boelow to pay for the work done. After defendant in error returned to Texas in September, he gathered the crop and took charge of the premises and planted a portion thereof to wheat. Foster & Cosby got their deed or title from the estate of John J. Brown, deceased, who left surviving him a wife and minor children. The guardian for the children was John Wallman. The deed from Mrs. Brown and the guardian was not executed to Foster & Cosby until August 4, 1917. This deed was filed August 17, 1917. After the execution of the deed to Foster & Cosby by the estate August 4th, they executed their deed to Phalen, and G. W. Cosby, of the firm, took the deed and delivered it to Phalen in Wisconsin, when and where he received the cash consideration recited in the contract and deed, and the notes were executed and delivered. The receipts show that this delivery was on the 22d day of August. Phalen sent the deed by Cosby to Sherman county for registration, which was filed on August 28th. The plaintiff in error, Emma R. Newman, in the district court of Sherman county, at the January term, 1913, obtained a judgment against Allison and Cosby, and G. W. Cosby, who is one of the grantors in the deed to defendant in error, for the sum of $376, costs $78, with credit of $8.60 interest at the rate of 6 per cent., the abstract of which was filed in Sherman county, where the land in question is situated, on the 25th day of August, 1917, and properly filed, recorded, and indexed, as required by law. The trial court recites in the judgment entry that he found defendant in error was in possession of the land under his claim of title at the time the abstract was filed and recorded, and rendered judgment removing the lien sought to be established against the land as a cloud and enjoined the sale of the same under the execution issued on the judgment.

By assignments the judgment of the trial court is assailed, because: (1) When an abstract of judgment is filed and indexed, from that date it is a lien upon all real estate then

owned or afterwards acquired by the defendant in the judgment; (2) that the burden is upon one claiming under a prior unrecorded deed to show that the judgment creditor had notice of such deed at the time of filing the abstract; (3) it is asserted by several propositions that the evidence is not sufficient to show notice or charge the plaintiff in error with notice.

[1, 2] It is now the settled rule in this state that one holding an unrecorded deed or contract subject to registration must show that a creditor had notice of such instrument, or facts sufficient to charge him with notice at the time such creditor procured a lien by virtue of the law, as distinguished from contract liens; and that the burden of proof is on the party claiming under an unrecorded contract or deed so to show. Article 6824, R. C. S.; Barnett v. Squyres, 93 Tex. 193, 54 S. W. 241, 77 Am. St. Rep. 854; Turner v. Cochran, 94 Tex. 480, 61 S. W. 923; Paris Grocery Co. v. Burks, 101 Tex. 106, 105 S. W. 174; Wright v. Lassiter, 71 Tex. 640, 10 S. W. 295; Grace v. Wade, 45 Tex. 522; Whitaker v. Farris, 45 Tex. Civ. App. 378, 101 S. W. 456; Rule v. Richards, 159 S. W. 387; Whitaker v. Hill, 179 S. W. 539. We think it is equally as well settled that an open, exclusive, and visible possession, maintained by the holder of an unrecorded deed, when the right of the creditor attaches, is notice of the right under which the land is held. Paris, etc., v. Burks, supra; Collum v. Sarger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184; Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258; Ellerd v. Ellison, 165 S. W. 878; Markley v. Martin, 204 S. W. 123; Watkins v. Edwards, 23 Tex. 443.

The law puts the purchaser or creditor upon inquiry as to possession, and does not permit him to assume that the possessor was holding under or in subordination to the title as shown of record. In this case, immediately after entering into the contract to purchase, the defendant in error took possession of the land by employing an agent to break the land, put in a crop, and build a fence, segregating it from other land. The agent and employés did this before the lien was obtained and after the contract and after the execution and delivery of the deed to defendant in error. We think the possession of his employés and agent was a clear, distinct, and visible assertion of the claim of ownership, and was therefore an exclusive one. Such possession, if continued for a period of time sufficient, would have given title under the statute of limitation, and we think it sufficient to charge plaintiff in error with notice of such claim under the contract, and deed, when she filed her abstract of judgment. G. W. Cosby had never been in possession of the land, either before or after his contract with the estate of Brown, which, with other facts, clearly distinguishes this case from Eylar v. Eylar, 60 Tex. 315, and is also distinguishable from Paris, etc., v. Burks, supra, where the holder of an unrecorded deed had, previous to such deed, conveyed the 18 acres of land in question to her son, whose deed had been recorded. The 18 acres were in the same inclosure with 72 acres resided upon by the mother, both at the time of deeding the land to her son and after it had been reconveyed to her by him and used in the same way; under the facts in that case, after the son had conveyed the land, his situation with reference to it was such as to have enabled him to put it to the use shown to have been made. Cosby, in this case, was never in such situation. He had never been on the land, had no other land in that inclosure, and had no title to it when the land was fenced and placed in cultivation. There was nothing to lead his creditor to believe he had any interest in the land until after the possession, improvements, and cultivation had been made by defendant in error. Any sort of inquiry, it occurs to us, would have notified the creditor when the judgment lien was filed who had possession of the land, and would have led to a knowledge of the right under which such possession was held. We believe the facts sufficient to sustain the judgment of the court on the ground that the plaintiff in error was charged with notice by defendant in error's possession and of his right and title to the land.

The judgment will be affirmed.