34   253
88   427

## R. WRIGHT V. W. B. HAYS.

1. Defendant and one H. entered into a written contract by which defendant agreed to convey to H. forty acres of land, designated by metes and bounds, as soon as patent should be obtained ; and H., upon his part, agreed to pay defendant fifty cents per acre for the land. H. transferred the contract to the plaintiff, who sued defendant for specific performance, tendering the fifty cents per acre in court, and alleging that the patent had been obtained, but that defendant refused to convey. Defendant answered to the effect that, at the time the written contract sued on was executed, he and H. agreed to an exchange of lands, by which defendant was to give to H. the forty acres described in the written contract, for certain other forty acres which were then vacant land, and which H. was to locate and secure, and they were to exchange deeds as soon as patents should be obtained ; that the exchange was not stipulated in the written contract, because the land was still vacant which H. was to give to defendant, and H. expected to secure it at a cost of not more than fifty cents per acre, the nominal sum specified in the written contract. *Held*, that this answer attempted to vary the written contract by a contemporaneous parol contract, and that exceptions to it for that reason were properly sustained—no principle being better settled than that which forbids the introduction of parol evidence to vary or contradict the terms of a written instrument.

2. The common practice of assigning as error that " the court erred in overruling the motion for a new trial," is open to the objection that no error is thereby specifically pointed out.

3. The contract of a married man to convey the homestead of himself and

Statement of the case.

wife is not unlawful, although a specific performance of it cannot be decreed so long as the wife lives and the property remains the homestead. Damages for non-performance might be recovered against him during the life of the wife; and if she should die and leave him a single man, without family, a specific performance may then be decreed against him. That a married daughter and her husband reside with him on the premises, after the death of the wife, seems to be immaterial. And it seems to be also immaterial that the wife was living when the suit was brought, provided she died before the case came to trial; in which event that fact may, it seems, be alleged and proved, and a specific performance decreed.

APPEAL from Parker. Tried below before the Hon. A. B. Norton.

W. B. Hays, the appellee, was plaintiff in the court below. He brought this suit in February, 1861, for specific performance of the following contract:

"MARCH 12, 1857, WALNUT CREEK,
PARKER COUNTY, TEXAS.

"Know all men by these presents that Robert Wright and C. C. Hays, have this day entered into an agreement concerning a piece of land lying on Walnut creek and in Robert Wright's survey, commencing at the northeast corner and running south to a certain post near the creek; thence west to said Wright's fence; thence north for complement; for which land said Wright do bind himself, his heirs and assigns, to make to C. C. Hays a deed for said land when the patent is obtained; and the said C. C. Hays do bind himself to pay to the said Robert Wright fifty cents per acre for said land. Whereunto we set our hand and affix our seals, using scrawls for seals.

"ROBERT WRIGHT,    [L. S.]
"C. C. HAYS.        [L. S.]

"H. HAYS, Witness."

"Cyrus C. Hays do assign all his right and title of the forego-

ing within bond to Wm. B. Hays forever, for value received of him, this fourth, 1858.

" CYRUS C. HAYS.

" Witness, G. W. CLARY."

The defendant Wright attempted to allege and prove that the contract was substantially different from the stipulations of this contract. In the first head note will be found an abstract of his allegations, though there were further representations in the same answer to the effect that the contract between him and C. C. Hays was a confidential transaction between neighbors, etc., etc. Exceptions to this answer were sustained by the court below, and the ruling is relied upon as error.

It was in proof that the defendant's wife was living at the date of the contract, the issuance of the patent, the institution of the suit, and down to a few months before the trial of the suit in November, 1869; and also that his son-in-law and married daughter have since resided with him upon the land. The court below refused instructions to the jury that they should find for the defendant, if the land was part of the homestead of the defendant and his wife at the issuance of the patent, or at the institution of the suit; and also a further instruction asked by the defendant, that "the death of the wife does not deprive the husband of his homestead rights, if he continues to reside upon the homestead with his servants or relations, after her death." The defendant excepted.

The court gave in charge to the jury the constitutional and statutory provisions respecting the homestead, in force prior to the Constitution of 1869.

The verdict was that "we, the jury, find in favor of the plaintiff, W. B. Hays, and against the defendant, Robert Wright, the land in controversy;" whereupon judgment was rendered for the plaintiff.

XXXIV—16

*John J. Good*, for the appellant. First—It is insisted that the court below erred in sustaining plaintiff's demurrer to defendant's special plea setting out the entire contract and breach. The defense was good in equity and should have been submitted to a jury. (1 Story's Eq. Jurisp., §§ 151–164; Id., 179–181; 2 Id., 1531.)

Notwithstanding the recitals in a deed (and the same rules will apply with more force in cases of bonds), it may be impeached on the ground that the purchase money was not paid. (Howard v. Davis, 6 Texas, 174; McGehee v. Shafer, 15 Texas, 204; Young v. Young, 19 Texas, 569; Gibson v. Fifer, 21 Texas, 263) ; that it was but a mortgage though absolute on its face. (Heatherly v, Record, 12 Texas, 50) ; that the consideration was different from that stated (Stramler v. Coe, 15 Texas, 217) ; or that it was executed on parol trusts. (McClenny v. Floyd, 10 Texas, 163.)

Second—The evidence in support of the homestead clearly established that at the date of contract, suit, and judgment, appellant with his family resided on 160 acres of land, of which the tract in controversy was part; that his wife resided with him from the date of settlement as a pre-emptioner, until her death, a short time before judgment; that she did not sign or acknowledge the bond, and appellant neither claimed or owned other land.

That the bond was null and void at its date and the institution of suit, for want of the wife's signature, and for this cause could not be enforced during her life, is not controverted by appellee's counsel. (State Constitution, General Provisions, § 15 ; Id., § 22 ; Paschal's Digest, 65 and 66, and notes.)

But they contend, first, Mrs. Wright alone could set up this defense; and second, that after her death specific performance may be decreed.

The first position is erroneous. The constitutional guarantee is " to all heads of families " (Paschal's Digest, p. 65), and the

right of the husband alone to sue for or defend the title to it is a clear legal one, which has never been refused him by this court. (Lee v. Kingsberry, 13 Texas, 68; Tadlock v. Eckles, 20 Texas, 791; Chilson v. Reeves, 29 Texas, 281.)

By statute and the decisions of this court, the wife is never a necessary party to any suit, except it involve the title to her separate property. (Paschal's Digest, article 4636, and decisions of the Supreme Court *passim;* and the land in controversy was not such.)

The second position is equally untenable. It is asserted, as a broad legal proposition, that the death of a wife alone cannot legalize or validate a contract null and void at its inception.

In the cases of Brewer v. Wall, 23 Texas, 585, and Allison v. Shilling, relied on by appellees, it is true this court laid down and reaffirmed the doctrine " that if the wife should die before the time expired for the performance of the bond, or if before the expiration of that time the obligor in the bond, and his wife, acquire another homestead, then the courts might decree specific performance, because any legal obstacle to a specific performance would be removed." These were decisive of the case at bar in the court below.

But on an examination of the statement of facts in the cases referred to, and all others involving the homestead question in which this court has sanctioned decrees for specific performance or the foreclosure of mortgages, it will be seen that neither husband or wife resided on the land in controversy at the date of decree. Both had removed and acquired other homesteads, and by their voluntary acts removed the obstacle. (Lee v. Kingsberry, 13 Texas, 69, 71; Stewart v. Mackey, 16 Texas, 58.)

In the case at bar, though the wife died before decree, "the head of the family," with a family, still lived upon and claimed the land as part of the homestead, and the obstacle (the constitutional inhibition) did exist at the date of decree. (Taylor v. Boulware, 17 Texas, 77; Wood v. Wheeler, 7 Texas, 19, 20.)

The decisions in the cases of Brewer v. Wall, and Allison v. Shilling, are no doubt correct, as applied to the facts of those cases; but believing the principle announced entirely too broad, and not decisive of the case at bar, we proceed to the discussion, keeping in view the fact that the land in controversy was a homestead at the date of the bond.

The death of the wife subsequently did not in the slightest degree alter or impair appellant's constitutional right. The only effect it had, or could have, was to confer on him the sole power to carry out his executory contracts in relation thereto, and make voluntary conveyances. It did not authorize the courts to force or compel him to carry out illegal and unconstitutional contracts.

It was his right, at any time before the execution and delivery of the deed, to refund the purchase money and disaffirm the contract; and this, too, whether he had or had not a wife at the date of the bond, provided he was the "head of a family," and residing on the land. Neither the obligee nor appellee could complain of this. They are conclusively presumed to have contracted with a full knowledge of the condition of the land and the risks to be run, and appellant's refusal to comply with his agreement afforded them no ground of legal complaint. It was *damnum absque injuria*.

That the judgment in this case was a "forced sale" of the land, we think will not admit of a doubt. A bond for title is never a sale, but merely a contract for sale. Until the payment of the purchase money, the obligee has not the shadow of an interest in the land. After the payment, he has a bare equity, which requires suit to compel conveyance if the deed is refused. (Vardeman v. Lawson., 17 Texas, 15.)

A decree that requires the obligor to accept the purchase money, and conveys for him the land, when he has positively refused it—to say nothing of the homestead and improved part thereof—is certainly not voluntary, but forced; and, in this case, violation of the

constitutional guarantee for its protection. (Sampson & Klein v. Williams, 6 Texas, 109, 110.)

If our views upon this subject are correct, we respectfully submit that the case ought to be reversed and dismissed, because appellee cannot better his condition on another trial.

*W. E. Hughes,* for the appellee.

OGDEN, J.—The pleadings in this cause are too numerous to admit a specific notice of each, or of the several causes of action or defense attempted to be set up by the plaintiff and defendant in the court below. We will therefore only notice such of the assignments of errors, and the questions therein raised, as may be deemed necessary for a correct determination of this cause; and, in doing so, we discover no sufficient error to authorize a reversal of the judgment unless it be contained in the sixth assignment. It is believed that the plaintiff's petition showed upon its face a sufficient cause of action, and therefore was not demurrable. We also think that the court did not err in sustaining plaintiff's exceptions to defendant's amended petition, which set up a contemporaneous parol contract that would materially change or wholly defeat the written contract sued on. There is, perhaps, no general rule of law better settled than that which forbids the introduction of parol evidence to vary or contradict the terms of a written instrument. (Greenl. Ev., §§ 275, 276 ; Trammel v. Pilgrim, 20 Texas, 160.) This pretended contract, or, as it is claimed to be, a part of the contract sued on, would, if admitted to be a part, or if admitted as an independent contract of itself, have wholly defeated the written contract, and would, therefore, have been in direct violation of the principle of law referred to.

We are also of the opinion that the pleadings and evidence authorized the judgment of the court in setting out the land by metes and bounds. The petition, contract and patent, together

with the parol evidence, sufficiently describes the land to warrant the judgment rendered.

The sixth assignment of error reads as follows: "The court erred in overruling the defendant's motion for a new trial." The above is a very common assignment of error, and yet it does not specifically point out any error, excepting upon the hypothesis that it was error to overrule a motion for a new trial under any circumstances. It is, however, presumed that the counsel filing the assignment intended to refer to some error of the court on the trial, and specifically pointed out in the motion for a new trial; and, by reference to the motion for a new trial, we discover no error, unless it be contained in the last clause of the motion, that the verdict of the jury is contrary to the law and the evidence. Certainly this is not distinctly pointing out the errors as required by article 1591, Paschal's Digest. But, upon an examination of the whole record, we find that the evidence establishes the facts that, in 1857, appellant and appellee's assignor entered into a contract in writing, by which appellant bound himself on the payment, as purchase money, of fifty cents per acre, to convey forty acres of a certain tract of land so soon as he obtained a patent for the same; that in 1859 a patent was issued to appellant for 160 acres of land, including the land described in appellee's petition, in the court below; that appellee, as the assignee of said contract, presented to appellant the contract for the forty acres of land, and demanded the conveyance according to the terms thereof; and that, on a refusal by the appellant to make the conveyance, appellee brought this suit to compel a specific performance of the contract; that the defendant in the court below, after his exceptions to plaintiff's petition were overruled, filed a general denial, and afterwards amended by setting up a contemporaneous verbal contract, which naturally changed the written contract, and on motion of plaintiff that amended answer was properly stricken out.

Subsequently, defendant filed a second amended answer, setting

up the fact that the land which he had contracted to convey was, at the time of making the contract and at the filing of the amended answer, a part of his homestead, and that he had no power or authority to convey the same.  This defense, so far as a specific performance was prayed for, might have been good at the time of executing the contract, as defendant was then a married man living on a portion of the 160 acre tract.  But at the trial of the cause, this defense had failed him, as his wife had died and left him a single man.  And notwithstanding that, at the time of executing the contract, he possibly could not have been compelled to execute a conveyance, and particularly if the land in controversy formed a part of the homestead, which is not satisfactorily proven in this case, without the consent of his wife; yet the contract as to him was not unlawful, but good and valid, and he might have been sued for damages during the life of his wife, and at her death he may be compelled to execute the deed, in compliance with his previous contract (Primm v. Barton, 18 Texas, 206; Brewer v. Wall, 23 Texas, 587; and Allison v. Shilling, 27 Texas, 450); and more especially as he sets up a claim to the homestead for himself alone.  But the question of homestead was properly presented to the court and jury, under the pleadings and evidence, the plaintiff claiming that the particular tract of land now in controversy was never a part of the homestead of defendant, and there was evidence that such might have been the fact.  The charge of the court presented to the jury the law in regard to the homestead rights, as favorably for the defendant as the facts proven would warrant, or as he had a right to ask or expect, and yet the jury found adversely to the homestead rights, and we are not inclined to question the legality or justness of their finding.  There is, however, a peculiar equity in this cause, as the appellant does not claim the homestead rights, for the benefit of a helpless family or children, but for himself alone, because he alleges that he is the head of a family and claims the protection of the law for himself,

against his own voluntary and solemn obligation, because of his allegation, imperfectly supported by proof, that he is the head of a family. We are unable to discover any sufficient error in the judgment of the district court to authorize a reversal. The judgment is therefore affirmed.

Affirmed.