**FIRST STATE BANK OF WORTHAM et al. v. BLAND et ux. (No. 412.)\***

(Court of Civil Appeals of Texas. Waco. Jan. 20, 1927. Rehearing Denied Feb. 24, 1927.)

**1. Trespass to try title ☞41(1) — Evidence held not to sustain finding that vendor canceled indebtedness on property by accepting oil leases.**

In suit to try title to property which plaintiff's remote grantor had contracted to sell to defendant, evidence *held* not to sustain finding that grantor had canceled indebtedness which defendant owed him on property by accepting oil leases owned jointly by grantor and defendant.

**2. Mines and minerals ☞55(1)—Conveyance of mineral rights must be by instrument in writing, properly executed and delivered.**

Owner of mineral rights has an interest in land, and, to convey same, it must be by an instrument in writing, properly executed and delivered.

**3. Deeds ☞208(4)—Execution and recording of deed by grantor is not conclusive of its delivery.**

Although execution and recording of deed by grantor makes prima facie case of delivery, it is not conclusive.

**4. Fraudulent conveyances ☞172(1)—Where party conveys property to defraud creditors, title vests absolutely in vendee, subject alone to be divested by creditors.**

Where party conveys property for purpose of defrauding creditors, title vests absolutely in vendee subject alone to be divested by creditors.

**5. Deeds ☞56(2)—Delivery of deed was question of intention, to be determined from all facts and circumstances surrounding transaction.**

Question whether there was actual delivery of deed, which grantor executed and had recorded himself, was one of intention, to be determined from all facts and circumstances surrounding transaction.

**6. Judgment ☞250—Trial court cannot submit case to jury on one theory and render judgment on different theory.**

Trial court cannot submit case to jury on one theory and then completely ignore same and render judgment on entirely different theory.

**7. Deeds ☞208(4)—That grantor executed deed, and, after holding it for 14 months, had same recorded, made prima facie evidence that he intended it as delivery.**

That grantor executed deed in December, 1918, and, after holding it for 14 months, had same recorded, made prima facie evidence that he intended it as a delivery.

Stanford, J., dissenting.

On Motions.

**8. Appeal and error ☞376—As regards sufficiency of writ of error bond, where petition showed that alleged adverse party was plaintiff in error, it was not necessary to make him defendant in error.**

As regards sufficiency of writ of error bond, where petition for writ of error showed that party whom defendant claimed to be interested adversely to plaintiff joined in and was one of plaintiffs in error, it was not necessary for him to be made defendant in error.

**9. Appeal and error ☞384(1)—Where pleadings and petition for writ of error described bank as corporation, writ of error bond, not describing bank as corporation, was sufficient.**

Where writ of error bond did not describe bank, plaintiff in error, as being corporation, but all of pleadings filed in case, as well as petition for writ of error, described bank as corporation, bond was sufficient.

**10. Appeal and error ☞435—Defendants in error, by appearing and filing briefs, waived defects in writ of error service.**

Where there were some minor irregularities shown in sheriff's return on writ of error citation as served on defendants in error, by appearing in Court of Civil Appeals and filing briefs they waived defects.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error dismissed for want of jurisdiction April 20, 1927.

On Motion for Rehearing of Motion to Strike out Statement of Facts.

**11. Appeal and error ⚖⇒564(5)—Showing held sufficient to authorize permitting statement of facts not filed within statutory period to be made part of record (Rev. St. 1925, arts. 2245, 2246).**

Showing that statement of facts, duly approved by all parties, was presented to trial court some days before time in which same was authorized to be filed, under Rev. St. 1925, art. 2246, had expired, and that, because of miscalculation on clerk's part, court was one day late in approving it and having it filed, *held* sufficient, under article 2245, to authorize permitting statement to be filed as part of record.

Error from District Court, Freestone County; J. R. Bell, Judge.

Suit in trespass to try title by the First State Bank of Wortham and others against J. O. Bland and wife, in which defendants filed a cross-action. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

P. Walter Brown, of Fort Worth, P. O. French, of Fairfield, and Bryant & Goar, of Wortham, for plaintiffs in error.

Williford & Geppert and Boyd & Smith, all of Teague, and J. C. Levens, of Lubbock, for defendants in error.

BARCUS, J. This suit was instituted by plaintiff in error First State Bank of Wortham, hereinafter designated as the bank, against defendants in error J. C. Bland and wife, in trespass to try title to certain lots on which a hotel is located in the town of Wortham. The bank, by amended and supplemental pleadings, alleged that the common source of title was W.' L. Tate, that W. L. Tate had conveyed the property to S. V. Tate, and that S. V. Tate had conveyed the same to the bank. Defendants in error answered, in effect, that they had made a contract for the purchase of the property with W. L. Tate, under the terms of which they were to and did pay $3,000 in cash, and placed $10,000 worth of improvements on the property in the way of additions to the hotel, and were to pay to W. L. Tate an additional $7,000; that they purchased the property and paid therefor to W. L. Tate on the representations that had been made to them by W. L. Tate and S. V. Tate that the property belonged to W. L. Tate. They alleged that, at the time the bank received the deed from S. V. Tate, its officers were charged with knowledge of said facts. They alleged further that the deed from W. L. Tate to S. V. Tate was without consideration, and was made for the purpose of defrauding the creditors of W. L. Tate and putting his property beyond their reach, and further alleged that no title passed to S. V. Tate, because the deed was never delivered to him by W. L. Tate, and therefore no title ever passed to the bank. They alleged by way of cross-action that P. J. Small, as administrator of the W. L. Tate estate, and S. V. Tate were claiming some interest in the property, and asked that they be made parties to the litigation and that their title be quieted as to the Tates and the bank. They alleged that they had paid the remaining $7,000 to W. L. Tate by his having agreed to take $7,000 worth of the mineral leases which were held in his name, but which were owned jointly by him and W. L. Tate.

P. J. Small, administrator of the W. L. Tate estate, answered, alleging that W. L. Tate had executed and delivered a deed to the property to S. V. Tate, and that S. V. Tate had executed and delivered a deed to the bank; that by reason thereof the bank was entitled to all of the equity of the W. L. Tate estate in and to the property, and prayed that the bank recover and thereby relieve the W. L. Tate estate from any liability on its warranty.

The bank, by a supplemental petition, admitted the execution of the contract of sale between W. L. Tate and Bland, and ratified same, but specifically denied that the $7,000 had been paid, and asked for a judgment against Bland for said amount, together with 6 per cent. interest from the date same was to be paid under the terms of the contract.

The cause was submitted to a jury, and, based on its answers and additional findings by the court, judgment was rendered denying the bank any recovery, and quieting the title of Bland and wife to the property, and canceling the debt of $7,000, and in effect holding that Bland had completely paid for the property.

The undisputed facts in the record show that W. L. Tate owned the property in controversy, and on November 15, 1918, he and his wife executed a general warranty deed to S. V. Tate, reciting $1,000 paid and subject to a lien of $800. This deed was by W. L. Tate filed for record and duly recorded January 5, 1920, and, after being recorded, was returned to and kept by him until his death in March, 1922. On November 18, 1921, W. L. Tate and J. C. Bland entered into a written contract, under the terms of which Tate agreed to convey the land to Bland in consideration of $10,000, $3,000 to be paid in cash, $5,000 on or before December 15, 1921, $1,000 by February 1, 1922, and $1,000 by March 1, 1922. Upon the payment of said sums W. L. Tate agreed to execute to Bland a warranty deed to the property, and in addition Bland agreed to make improvements on the property by building a 22-room addition to the hotel. The contract provided that, if Bland failed to carry out its terms, he would forfeit all money paid by him. The record further shows that, beginning with September, 1919, J. C. Bland rented the property from W. L. Tate and continued to occupy same as a tenant until the time of his purchase in November, 1921. The record further shows that Bland did build the addition to the hotel and make permanent improvements on the property at a cost of $10,000. The record further shows that, at the time Bland rented the property from W. L.

Tate, as well as at the time when he made the contract of purchase, S. V. Tate told him that he (S. V. Tate) had no interest in the property, but that it belonged entirely to his brother, W. L. Tate. On January 3, 1925, S. V. Tate conveyed the land to the bank for a recited consideration of $2,000 paid.

In addition to the above facts, the jury found, in response to special issues, that the bank officials, at the time S. V. Tate made his deed to it, knew he had told Bland he had no interest therein, and that Bland had bought on the strength thereof, and found that W. L. Tate did not make a selection of any specified leases that were owned jointly by him and J. C. Bland in full settlement and satisfaction of the $7,000 deferred payments, and found that, after W. L. Tate died, J. C. Bland claimed to own a full one-half interest in the oil and gas leases which were standing in the name of W. L. Tate, and found that W. L. Tate did cancel the indebtedness of $7,000 against the property involved in the suit. The bank and Bland each filed a motion asking the court to render judgment in their favor, based on the answers of the jury.

The bank contends that the jury's finding that W. L. Tate canceled the indebtedness of $7,000 against the property is wholly without support in the evidence, and further contends that, if there is any support in the evidence sustaining said issue, that the answer thereto is in direct conflict with, and contradictory to, the finding of the jury that W. L. Tate did not make a selection of any specified oil leases owned jointly by himself and Bland in full settlement and satisfaction of the $7,000 deferred payments. The only testimony offered by Bland as to how he paid the $7,000 deferred payments was on the theory that Tate had agreed to accept $7,000 worth of the oil leases and cancel the indebtedness. The testimony with reference to the transaction between W. L. Tate and Bland was by J. C. Levens. Under the most favorable construction to be placed on his testimony, it appears that there were about 10,000 acres of land on which J. C. Bland and W. L. Tate held mineral leases, all of them standing in the name of W. L. Tate, but owned jointly by himself and Bland; that Bland desired to sell a portion thereof in order to obtain money with which to pay W. L. Tate the remaining $7,000; that Tate agreed to accept part of Bland's leases in full satisfaction thereof, and in consideration therefor agreed to cancel the indebtedness and execute to Bland a clear deed to the hotel property; that in pursuance thereof W. L. Tate was to get the lot and block number of the hotel property, and Levens, an attorney, was to prepare a deed from Tate to Bland. The lot and block number were never furnished Levens, and shortly thereafter Tate was taken suddenly ill and died. No deed was executed by Bland to Tate for the mineral leases, and no release or deed was executed by Tate to Bland for the hotel property, and, as above stated, the jury found that Tate never selected any specific leases owned jointly by himself and Bland in full settlement and satisfaction of the $7,000. Under the most favorable aspect of the testimony, the contract between Bland and W. L. Tate was executory, and it does not appear that Bland executed any deed to Tate or that Tate selected any acreage, or that there was any agreement with reference to the amount of acreage that Bland was to convey to Tate in satisfaction of the $7,000 note. The record shows that Tate never executed a deed to Bland, and it appears from the evidence that neither of the parties did any act with reference to the carrying out of the executory contract.

[1, 2] We do not think the evidence is sufficient to sustain the jury's finding that W. L. Tate canceled the indebtedness of $7,000 which Bland owed him on the property. It is a well-recognized principle of law that the owner of mineral rights has an interest in the land, and that to convey same it must be by an instrument in writing, properly executed and delivered. Gardner v. Sittig (Tex. Com. App.) 222 S. W. 1090; Green v. Priddy, 112 Tex. 567, 250 S. W. 656; Schmidt v. Baar (Tex. Civ. App.) 283 S. W. 1115 (error dismissed); Pantaze v. McDill (Tex. Civ. App.) 228 S. W. 962; Texas Co. v. Tankersley (Tex. Civ. App.) 229 S. W. 672. Under the established facts in this case, there was no legal transfer of the interest which J. C. Bland owned in the mineral leases to W. L. Tate, and there was not, therefore, any payment of the $7,000 made by virtue thereof, and, since there was no legal payment of said $7,000 deferred payment, the trial court was in error in rendering judgment for the defendants in error, canceling same and removing the cloud from their title by reason thereof. The evidence further shows beyond dispute that J. C. Bland after the death of W. L. Tate, had the agreement which had been made between him and W. L. Tate reciting that the mineral leases were owned jointly by him and W. L. Tate, recorded, and on several different occasions thereafter he claimed to be the owner of an undivided one-half interest in said mineral leases, and demanded that the administrator of W. L. Tate's estate make to him a conveyance thereof.

[3-7] Defendant in error Bland in his answer offered to pay any portion of the unpaid purchase money on the property, which the court might find was still unpaid. The trial court apparently rendered judgment in favor of defendants in error on the theory that Bland had paid to W. L. Tate the entire indebtedness. Under our holding above, the court was in error in rendering judgment on this theory. Defendants in error contend that, if the court was in error in rendering a judgment on the theory of payment, nevertheless the judgment should be affirmed because the record shows that the deed from W. L. Tate to S. V. Tate was never delivered, and that therefore S. V. Tate had no title to convey to the bank, and that, since the bank had

knowledge thereof, it cannot complain because it has no interest in or to the property in controversy. The question as to what constitutes delivery of a deed is a question of law, but as to whether there is in fact a delivery is a question usually for the jury to determine. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 5 A. L. R. 1660; Williams v. Moore, 24 Tex. Civ. App. 402, 58 S. W. 953. Where a deed is executed and placed of record by the grantor, it makes a prima facie case of delivery. Belgarde v. Carter (Tex. Civ. App.) 146 S. W. 964; Newton v. Emerson, 66 Tex. 142, 18 S. W. 348. The execution and recording of a deed by a grantor, however, is not conclusive of its delivery. Heintz v. O'Donnell, 17 Tex. Civ. App. 21, 42 S. W. 797. It has also been held that, where a party conveys property for the purpose of defrauding his creditors, title absolutely vests in the vendee, subject alone to be divested by the creditors. Maples v. Maples (Tex. Civ. App.) 275 S. W. 1091; Stevens v. Cobern, 109 Tex. 574, 213 S. W. 925; Dittman v. Weiss, 87 Tex. 614, 30 S. W. 863. There is evidence tending to show that S. V. Tate never heard of the deed which W. L. Tate had executed and had recorded, conveying the property to him until after W. L. Tate died, and that, immediately upon discovering the deed, S. V. Tate claimed the property as his own. The question as to whether there was an actual delivery of the deed from W. L. Tate to his brother, S. V. Tate, is one of intention, to be determined from all of the facts and circumstances surrounding the transaction. It is the well-settled rule of law that a trial court cannot submit a case to the jury on one theory and then completely ignore same and render a judgment on an entirely different theory. National Union Fire Ins. Co. v. Richards (Tex. Civ. App.) 278 S. W. 488, and authorities there cited. We cannot agree with the contention of defendants in error that under the facts in this case the trial court should have rendered judgment for them because there was no delivery of the deed. We do not think the evidence shows conclusively that there was or was not a delivery of the deed by W. L. Tate to his brother, S. V. Tate, and this issue was not submitted to the jury. The fact that he executed the deed in December, 1918, and, after holding it for 14 months had same recorded, at least makes, under the authorities above cited, prima facie evidence that he intended it as a delivery. If there was in fact no delivery of the deed from W. L. Tate to S. V. Tate, the property still belongs to W. L. Tate's estate, and said estate or his heirs are entitled to recover the $7,000, if same has not been paid. Koppelmann v. Koppelmann, 94 Tex. 40, 57 S. W. 570; Kellogg v. Chapman (Tex. Civ. App.) 201 S. W. 1096.

Because we do not think the evidence justified the findings of the jury that the debt has been canceled, and because we think the court was not justified in rendering a judgment quieting defendants in error's title as against said $7,000 unpaid purchase money, the judgment of the trial court is reversed, and the cause remanded.

STANFORD, J. Not being able to agree with my associates, I hereby file the following dissenting opinion:

This cause was instituted by plaintiff the First State Bank of Wortham, Tex., on the 14th day of February, 1925, being a suit in trespass to try title, against defendants, J. C. Bland and wife, Mrs. J. C. Bland, to recover certain real property in the town of Wortham, known as the Commercial Hotel, said pleading being in the usual form of trespass to try title, alleging that plaintiff was the owner of said property on January 3, 1925, and was on said date dispossessed by defendants, etc. On July 6, 1925, plaintiff bank filed a first supplemental petition, pleading the common source, through whom it and defendants were claiming title, to be W. L. Tate. Plaintiff also filed additional supplemental petitions, to which reference will hereinafter be made. Defendants filed an answer, containing a general demurrer, general denial, and plea of not guilty; also a cross-bill in which they sought affirmative relief. Defendants also interpleaded S. V. Tate, the vendor of plaintiff bank, and also P. J. Small, as administrator of the estate of W. L. Tate, deceased, alleged to be the remote vendor of plaintiff bank, and the vendor of defendants; also certain special pleas, setting out their source and claim of title.

The case was tried before a jury, and, in response to special issues submitted to them, the jury found as follows:

"(1) The defendant J. C. Bland, before entering into negotiations for the purchase of the hotel property in question, did see S. V. Tate at Saginaw, Tex., with a view of purchasing same.

"(2) S. V. Tate did tell J. C. Bland that he did not own the property in question, and did refer said Bland to W. L. Tate as the owner thereof, if he wished to purchase, before the execution of the contract of purchase and sale between W. L. Tate and J. C. Bland.

"(3) That such statement of S. V. Tate did induce J. C. Bland to enter into the contract of sale with W. L. Tate for the purchase of the property in question.

"(4) That the vice president of the First State Bank of Wortham, or other officer of said bank, did know before it received the deed from S. V. Tate that said S. V. Tate had made said representations to said J. C. Bland, and that said J. C. Bland was induced thereby to enter into the contract of sale and purchase with said W. L. Tate.

"(5) That W. L. Tate did not make a selection of certain specified leases owned jointly by himself and J. C. Bland, in full settlement and satisfaction of the $7,000 deferred payment for the hotel property provided for in the contract of sale entered into between said W. L. Tate and J. C. Bland for the purchase of said property."

"(7) The defendant J. C. Bland did build the 22-room addition to said hotel, and the garage, and make the other improvements specified in the contract of sale within the time specified in said contract.

"(8) The total of all of the improvements placed on the premises in question by J. C. Bland is $10,000."

In response to plaintiff's requested special issue given by the court, the jury found:

"After the death of W. L. Tate, J. C. Bland did assert and claim to own a full one-half interest in the oil and gas leases which stood in the name of W. L. Tate, which said W. L. Tate admitted were owned one-half by said J. C. Bland and one-half by W. L. Tate."

In response to special issue requested by defendants and given by the court, the jury found:

"W. L. Tate did cancel the indebtedness of $7,000 against the property involved in this suit."

On said findings of the jury and such additional findings by the court as the evidence warranted, the court entered judgment for the defendants. The statement of the case as made in the majority opinion is substantially correct and will not be repeated here.

It is thought the findings of the jury to the first, second, third, and fourth special issues were sufficient to require judgment to be rendered, not only against S. V. Tate, but also against the plaintiff bank, provided there is evidence to sustain the finding in response to the fourth special issue, to the effect that said bank had notice at the time it received its deed from S. V. Tate of the representations by S. V. Tate to J. C. Bland to the effect that the hotel property belonged to W. L. Tate. The contract of sale from W. L. Tate to J. C. Bland was dated November 18, 1921, and filed for record in the deed records of Freestone county on May 15, 1922. The deed from S. V. Tate to plaintiff bank was not made until January 3, 1925, so said bank at the time it received its deed had constructive notice of all the terms of said contract of sale. Again, defendants Bland and wife, since the date of said contract of purchase, have occupied said property, claiming it as their own, and said property is situated only a block or two from the office of said bank. Plaintiff bank knew of their possession of said property at the time it received its deed. The open, exclusive, and visible possession of the property in controversy by defendants Bland and wife was constructive notice to the plaintiff bank of all the rights by which said parties held said property. Watkins et al. v. Edwards et al., 23 Tex. 443; Newman v. Phalen et al. (Tex. Civ. App.) 214 S. W. 958; Cox et al. v. Kearby (Tex. Civ. App.) 175 S. W. 734. But in the trial of the former case of S. V. Tate v. J. C. Bland, filed in 1922 to recover the same property involved here, and in which case a nonsuit was taken, the same facts were involved as are here involved, and the vice-president of plaintiff bank was a witness and was present during said trial. I think the finding of the jury to the fourth special issue is fully sustained by the evidence, and that plaintiff bank had not only constructive notice of all the rights by which defendants claimed to own said property, but also actual notice of all such rights, and that said bank's right of recovery was no better than S. V. Tate's rights would be if he was seeking such relief. The evidence, some of which is copied in the majority opinion, is ample to show that S. V. Tate repeatedly told J. C. Bland that he (S. V. Tate) had no interest in said property, but that it belonged to W. L. Tate. S. V. Tate knew of the sale to J. C. Bland, knew that Bland paid W. L. Tate $3,000 cash on said property, knew that Bland was expending some $10,000 for improvements on same, knew that Bland and wife were occupying it, claiming it, and improving it under their purchase from W. L. Tate. S. V. Tate never paid any taxes on it, never claimed any interest in it, nor attempted to exercise any control over it until after W. L. Tate's death. In 1922, S. V. Tate brought a suit against J. C. Bland and wife to recover the same property, but before the trial was concluded took a nonsuit, without testifying in said cause, and he did not testify in this cause—in fact, he has never testified that he owned any interest in said property. The record is conclusive that J. C. Bland relied upon the statements by S. V. Tate to the effect that he (S. V. Tate) owned no interest in said property, but that W. L. Tate did own same, and Bland was thereby induced to buy said property and pay $3,000 on the purchase price and to expend $10,000 for improvements, and the jury found that the bank knew, before it received the deed from S. V. Tate on January 3, 1925, that S. V. Tate had made said representations to J. C. Bland, and that J. C. Bland was induced thereby to enter into the contract of sale and purchase with W. L. Tate. The findings of the jury to the first four special issues are amply sustained by the evidence, and effectively estopped the bank from the right of recovery, and required the rendition of judgment denying the right of plaintiff bank to recover said property, and the trial court was correct in so holding. It is also true, if said bank had no notice, it could acquire no interest as an innocent purchaser, because it paid nothing of value but took a deed from S. V. Tate in settlement of a preexisting debt it held against W. L. Tate, deceased. McKamey v. Thorp, 61 Tex. 648; Spurlock v. Sullivan, 36 Tex. 511; Steffian et al. v. Milmo Nat. Bank, 69 Tex. 513, 6 S. W. 823.

It is thought clearly the plaintiff bank failed to show any right of recovery of any interest, either legal or equitable, in the property in controversy, and, as far as the plaintiff bank and S. V. Tate, who disclaimed any interest, are concerned, in any view of the case, the judgment awarding the property to Bland and wife is correct and should be affirmed.

Under other assignments the plaintiff bank complains of the failure of the trial court to

instruct in its favor for the recovery of $7,-000 and accrued interest, same being the amount of deferred payments on the property claimed by plaintiff to be unpaid; and under other assignments plaintiff bank contends it was entitled to judgment for said $7,000 on the findings of the jury. The record shows defendant J. C. Bland and W. L. Tate owned jointly and in equal interests certain oil and gas leases on about 10,000 acres of land in Freestone county, but title to same was in the name of W. L. Tate alone. This fact is established by an instrument in writing and not denied by any one. The evidence without dispute shows that W. L. Tate and J. C. Bland entered into an agreement by the terms of which J. C. Bland sold to W. L. Tate an interest of $7,000 in his (Bland's) one-half interest in said leases, in consideration of which W. L. Tate canceled or agreed to cancel the deferred payment of $7,000 against the hotel property, by reason of which, as contended by defendants, Bland became entitled to a deed conveying a clear title to said property to him. The record discloses further without dispute that W. L. Tate recognized Bland's right to such deed, and employed an attorney to prepare such deed, and said attorney did prepare such deed, but that W. L. Tate died suddenly without executing the same. There was evidence, and the jury so found, that J. C. Bland, after the death of W. L. Tate, claimed a half interest in said leases. While this evidence was proper to be considered, yet it was not sufficient to enable the court to say, as a matter of law, that said agreement between W. L. Tate and J. C. Bland was not made. The jury found that W. L. Tate did cancel said $7,000 against the hotel property, which was also an implied finding that said agreement was made. If this finding of the jury be construed to mean that W. L. Tate marked some instrument of writing, evidencing said indebtedness, "Canceled," then such finding is without evidence to support it, but, if said finding be construed to mean that W. L. Tate agreed to consider and did consider and treat said indebtedness as satisfied, then it is supported by the evidence. There was no written instrument evidencing said indebtedness except the contract of sale and purchase, and of course the parties would not be expected to cancel it. Under the contract of purchase, Bland was not entitled to a deed conveying the hotel property to him until he had paid all the purchase money. It seems the parties understood the whole matter would be settled between them, title to all the leases already being in W. L. Tate, by W. L. Tate executing a deed, reciting a cash consideration, conveying said hotel property to J. C. Bland, and to consummate the transaction, W. L. Tate instructed his attorney to prepare such deed, and said attorney did so, but W. L. Tate died suddenly without executing same. The jury found that W. L. Tate did not make a selection of certain specified leases owned jointly by him and J. C. Bland in

full settlement of the $7,000 of deferred payment for the hotel property, and found further that J. C. Bland, after the death of W. L. Tate, did assert and claim to own a full one-half interest in said leases, and the plaintiff bank claims that on these two findings it was entitled to judgment for the $7,000 and accrued interest.

As shown by the record, the agreement between W. L. Tate and J. C. Bland was that W. L. Tate would cancel the $7,000 against the hotel property in consideration that he (W. L. Tate) be allowed to retain and become the owner of leases out of J. C. Bland's one-half interest of the value of $7,000; said leases to be of W. L. Tate's own selection. This agreement does not indicate that the selection of the leases by W. L. Tate was a condition precedent to the cancellation of said indebtedness. The parties evidently did not so understand. W. L. Tate during his lifetime had his right to select said leases, and after his death the same right vested in his legal representatives. This finding of the jury that W. L. Tate did not make selection of said leases, I think, was an immaterial finding, and was not determinative of any issue in the case. The other finding, to the effect that, after the death of W. L. Tate, J. C. Bland claimed a half interest in said leases, was purely and only evidentiary in its nature, proper to be considered by the court or jury in passing upon the controlling issues, but not determinative of any controlling issue in the case.

The bank pleaded the statute of frauds, and contends, if W. L. Tate did cancel said $7,000 indebtedness, as found by the jury, or agreed to treat same as settled, as the undisputed evidence shows, that such agreement was ineffectual because the $7,000 interest in the oil leases, being an interest in real estate, was not conveyed in writing by Bland to W. L. Tate. There are several reasons why it is thought there is no merit in this contention. The statute of frauds is not applicable. If W. L. Tate, in pursuance to the agreement he had made with Bland, had selected the leases, as he had the right to do, and Bland had refused to convey same to him, and Tate had filed suit against Bland for the recovery of said leases, then Bland could, by pleading the statute, have defeated a recovery, but would have been bound to restore what he had received; in other words, pay the $7,000 indebtedness. Ray v. Young, 13 Tex. 550; Thouvenin v. Lea, 26 Tex. 612; Brewer v. Wall, 23 Tex. 585, 76 Am. Dec. 76; Allison v. Shilling, 27 Tex. 450, 86 Am. Dec. 622; Wright v. Hays, 34 Tex. 253; Bell v. Schwarz, 37 Tex. 572. The statute does not render a contract thereunder absolutely void, but voidable only, and is for the benefit of the defendant. Graham v. Kesseler (Tex. Civ. App.) 192 S. W. 299, and cases there cited. It is also true, in order for the statute to be available, it must be pleaded. League v. Davis, 53 Tex. 9; Texas Brewing Co. v. Walters (Tex. Civ. App.) 43 S. W. 548; Inter.

Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 98 S. W. 93; Hendrix v. Brazzell (Tex. Civ. App.) 157 S. W. 280; Edwards v. Old Settlers' Ass'n (Tex. Civ. App.) 166 S. W. 423; Johnson v. Tindall (Tex. Civ. App.) 161 S. W. 401; Larrabee v. Porter (Tex. Civ. App.) 166 S. W. 395; Savage v. Mowery (Tex. Civ. App.) 166 S. W. 905. What the bank was attempting to do, by pleading the statute in this case, was to show a want of consideration for the agreement on the part of W. L. Tate, by which he relinquished to J. C. Bland the $7,000, the balance of purchase money on the hotel property. Said plea should have been so designated and so treated by the trial court, and, when so treated, to be available in any event, it would have been necessary to show that W. L. Tate or his administrator had selected the leases of the value of $7,000, that Bland had refused to convey same, and defeated recovery thereof by pleading the statute of frauds. The court will not presume all these things in the absence of any· pleading or evidence. But there is another reason why the bank was entitled to no relief by reason of the statute of frauds. At the time the parol agreement was made by W. L. Tate and J. C. Bland, whereby the $7,000 indebtedness was settled and the leases of the value of $7,000 became the property of W. L. Tate, the bank had no interest in said indebtedness nor in said leases. It was not a party to said contract. The invalidity of a parol contract within the statute cannot be set up by a stranger to it. The defense is personal to the one sought to be charged. Railway Co. v. Settegast, 79 Tex. 256, 15 S. W. 228, and cases there cited; General Bonding & Casualty Ins. Co. v. McCurdy (Tex. Civ. App.) 183 S. W. 796; McManus v. Matthews (Tex. Civ. App.) 55 S. W. 589; Bell v. Beazley, 18 Tex. Civ. App. 639, 45 S. W. 401. All of these assignments should be overruled. The trial court was correct in refusing to instruct a verdict for plaintiff bank for the $7,000, and was correct in refusing to render such judgment.

It is thought that the evidence was sufficient to support the finding of the jury to the effect that the $7,000 indebtedness was canceled by W. L. Tate, in the sense and only sense it could have been canceled by him, to wit, a verbal agreement or relinquishment, and that this court should not disturb said finding; but, if said finding is not supported by the evidence, or if said verbal relinquishment was not sufficient to extinguish said indebtedness, still the plaintiff bank was not entitled to recover said $7,000. The bank's suit was one in trespass to try title to the hotel property. The appellant bank in its pleading admitted the execution of the written contract of sale from W. L. Tate to J. C. Bland, and pleaded in the alternative that, if it was not entitled to recover the property on its petition of trespass to try title, then that J. C. Bland was still owing $7,000 of unpaid purchase money which was due and unpaid, and, the "bank having acquired and

now being the owner of all right, title, and interest in said property, including the right to collect said purchase money, is entitled to judgment for said sum of money." . Again the bank pleads in its third supplemental petition:

"This plaintiff again offers to accept from the defendants payment of the $7,000 called for in the written contract of purchase under which defendants claim * * * and to execute to defendants on said payment a deed to said property," etc.

The bank's right to recover the $7,000 is, under its own pleadings, made dependent upon its right to recover the property, and, if the bank was estopped to recover any interest in the property, it necessarily follows it could have no right to recover the $7,000 or any interest therein. The contract of sale from W. L. Tate to J. C. Bland was executory, and the legal title to the property remained in W. L. Tate until the purchase money was paid. If the $7,000 balance of the purchase money was not settled during the lifetime of W. L. Tate by the lease transaction, then on his death the beneficial interest in said executory contract vested in his legal representatives and was subject to administration for the payment of his debts. The administrator of the estate of W. L. Tate in his pleading asked that the bank be permitted to recover said property, but in the alternative prayed that the bank be permitted to recover said $7,000. There is no evidence in the record that would tend to show any right in the bank to such recovery. The administrator could not, by pleading or otherwise, short of an order of the probate court, confer such right. The plaintiff bank having failed to show any interest, either legal or equitable, in said property, it necessarily follows, in the absence of evidence showing some other right, that plaintiff bank could not be interested in the $7,000 purchase money alleged to be unpaid. If said $7,000 was not paid, and if same was not properly assigned or transferred by W. L. Tate, or his administrator in obedience to an order of the probate court, then the right of recovery of same was in said administrator. Neither S. V. Tate nor the administrator of W. L. Tate, deceased, has by pleading or evidence sought to recover the $7,000. Neither has in any way attempted to show any right to such recovery, nor by assignment or otherwise challenged the correctness of the judgment of the trial court in so far as their rights are involved. The bank, having no interest in said $7,000, has no grounds for complaint.

The writer is of the opinion the judgment of the trial court should be affirmed.

### On Motions.

BARCUS, J. Defendants in error have filed three motions in this cause. The first is to strike out the statement of facts because same was not filed in the trial court within .

the time prescribed by article 2246 of the Revised Statutes 1925. It seems that the Codifying Commission made some radical changes in article 2073 of Vernon's Sayles' 1914 Statutes with reference to the time within which statements of facts can be filed. The present statute requires the statement of facts and bills of exception to be filed within 80 days after the adjournment of court, unless the court may by law continue more than 8 weeks, in which event they must be filed within 90 days after final judgment, unless the trial judge for good cause shown extends the time for filing such statement of facts and bills of exception. This cause was tried at the October term of the Eighty-Seventh district court, which by law began on October 5 and ended on October 30, 1925. The trial court gave the plaintiffs in error 80 days from the adjournment of court on October 30th in which to file the statement of facts and bills of exception, and there was no request made and no order of court authorizing same to be filed thereafter. The record shows that the statement of facts was prepared by the official court reporter on December 9, 1925, and was approved by all the counsel for the respective parties, and' was on January 19, 1926, approved as the statement of facts by the trial court, and was, on January 19, being eighty-one days after court adjourned, filed by the district clerk of Freestone county. The court, in its order approving the statement of facts, did not authorize same to be filed. It has been held that the filing of a statement of facts by the clerk after the expiration of the time permitted by law is not in fact a filing. State v. Lincoln (Tex. Civ. App.) 147 S. W. 1195, and, until a statement of facts has been properly filed in the trial court, it cannot be filed in the appellate court. Magee v. Magee (Tex. Civ. App.) 272 S. W. 252. The Supreme Court has recently held under the old law that the trial court may in its discretion permit a statement of facts to be filed after the 90-day period, and that thereafter the appellate court has the discretionary power to authorize the statement of facts to be filed in the appellate court. Ziegler v. Hunt, 280 S. W. 546. This opinion, however, holds that it is absolutely essential for the statement of facts to be first filed in the trial court. The motion to strike out the statement of facts is therefore granted.

[8, 9] Defendant in error's second motion is to dismiss this cause because of an insufficient writ of error bond. They contend that P. J. Small as administrator of the estate of W. L. Tate, deceased, was adversely interested to the First State Bank of Wortham, and is therefore a necessary party as a defendant in error. The petition for writ of error shows that P. J. Small, as administrator of the W. L. Tate estate, joins in and is one of the plaintiffs in error in this cause, joining with the First State Bank of Wor-

tham, and it was not therefore necessary for him to be made a defendant in error. They further contend that the bond does not describe the bank as being a corporation and does not in any way indicate or show that it is a corporation. All of the pleadings filed in the case, as well as the petition for a writ of error, describe the bank as a corporation. We do not think there is any merit in this contention, and said motion is overruled.

[10] Defendants in error's third motion is to dismiss the writ of error because of insufficient service of the writ of error citation. There are some minor irregularities shown in the sheriff's return on the writ of error citation as served on the defendants in error. The defendants in error have, however, appeared in this court and filed briefs, and have thereby waived any defects in said writ of error service. It therefore becomes unnecessary for us to, and we do not, pass on the questions raised by said motion.

## On Motion for Rehearing of Motion to Strike out Statement of Facts.

BARCUS, J. [11] Plaintiffs in error have filed their motion asking that the order heretofore made, sustaining defendants in error's motion to strike out the statement of facts in this cause, be set aside, and said motion be overruled. They have attached, to their motion the affidavits of Mr. French, one of the attorneys, and the district clerk, who filed the statement of facts in the trial court, to the effect that the statement of facts, duly approved by all the parties, was presented to the trial court some days before the time had expired in which same was authorized to have been filed, and that the court at said time stated he would approve and have same filed within the time allowed by law; that by reason of a miscalculation on the part of the clerk the court was one day late in affixing his signature approving the statement of facts and having the clerk actually mark the same filed.

The affidavits further show that the statement of facts had for a number of days been in the district clerk's office, waiting for the approval of the court, and that the court had been requested a number of times to approve same, and had constantly promised that he would do so. The affidavits show that the court, at the time he did sign and approve the statement of facts, and at the time the same was filed by the clerk, thought it was being filed within the time which the court had granted for the filing thereof.

We think this showing is sufficient, under article 2245 of the Revised Statutes, to authorize us to permit said statement of facts to be filed as a part of the record. The motion for rehearing is therefore granted, and defendants in error's motion to strike out the statement of facts is overruled, and the opinion heretofore filed by us is withdrawn.