H. D. LEWIS et al., Appellants,

v.

Warren H. BROWN et al., Appellees.

No. 15960.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 6, 1959.

Rehearing Denied March 6, 1959.

**314**

Aubrey J. Roberts, Dallas, Burford, Ryburn & Ford, Clarence Guittard, C. Benton Musslewhite and Logan Ford, Dallas, for appellants, H. D. Lewis et al.

C. C. Renfro, Dallas, for appellees and cross-appellants Warren H. Brown and George R. Brown.

Storey, Armstrong & Steger and Charles P. Storey, Dallas, for appellees Sue Adeline Williamson et al.

BOYD, Justice.

On October 19, 1949, J. C. Williamson and wife, Sue Adeline Williamson, executed a contract to sell to Warren H. Brown a 30 acre tract of land; and on the same day they executed to said Brown an option to buy an additional 24.9 acres contiguous to the 30 acre tract. On November 15, 1949, the Williamsons executed a deed to Brown covering the 30 acre tract.

By the option contract the Williamsons bound themselves, their heirs, executors, and administrators "to give said Second Party the option to buy and to convey to him by general warranty deed at any time within three years from the date hereof, for the sum of One Thousand Dollars ($1,000.00) per acre, in cash or on terms acceptable to First Parties," the tract described therein.

On February 11, 1952, Warren H. Brown, joined by George R. Brown, executed a contract to convey the 30 acre tract and the optioned tract to H. D. Lewis and E. P. Lamberth for the sum of $1,600 per acre. This contract provided that "Warren H. Brown and George R. Brown agree to immediately exercise their option to 'Tract 2' in accordance with their option agreement now of record; and, that on obtaining title to said 'tract 2' they agree to convey the land to H. D. Lewis and E. P. Lamberth in accordance with this contract, it being understood and agreed that the Seller shall have 6 months from the date of exercising his option before conveying Tract 2 to said H. D. Lewis and E. P. Lamberth."

In February, 1952, Warren H. Brown exercised his option on the 24.9 acre tract and tendered to the Williamsons the $1,000 per acre purchase price. The Williamsons refused to execute a deed. On March 7, 1952, Warren H. Brown and wife conveyed the 30 acre tract to Lewis and Lamberth. On April 12, 1952, Lewis and Lamberth called upon the Browns and the Williamsons to execute the deeds contemplated by their contracts relating to the optioned tract, and tendered performance on their part. The Williamsons again refused to execute a deed.

On October 17, 1952, Lewis and Lamberth filed this suit against the Browns and the Williamsons, asking for specific performance of their contracts, and in the alternative for damages. The Browns answered that they were willing but unable to perform because of the refusal of the Williamsons to convey the tract to them, and that "plaintiffs' remedy of specific performance should be allowed." The Williamsons pleaded that Lewis and Lamberth were not in privity of contract with them and had no standing in court to enforce performance of the Williamsons' contract with Warren H. Brown, and further that "at all material times" the optioned tract was part of their rural homestead.

Before the trial, Lamberth and J. C. Williamson died, and their heirs and legal representatives were made parties.

By an instrument in writing executed on November 1, 1957, the Browns undertook to "sell, transfer, assign, set over and convey to the said H. D. Lewis and E. P. Lamberth, their heirs and assigns forever, the option agreement and contract" which had been entered into by the Williamsons and Warren H. Brown.

Trial was to the court, and judgment rendered that plaintiffs take nothing. Lewis and the Lamberth heirs and legal representatives appealed as to all parties, and will be referred to as appellants; Warren H. Brown and George R. Brown appealed as to all parties, but join in the brief for Lewis and Lamberth, and will be referred to as the Browns; Sue Adeline Williamson and the heirs and legal representatives of J. C. Williamson will be referred to as appellees.

■ The Browns did not ask for specific performance against the appellees, and at the outset we are met with appellees' contention that appellants cannot maintain the suit against appellees. They insist that the Browns' contract with appellants did not constitute an assignment of the option, and that without such assignment appellants are not in privity with appellees.

We have reached the conclusion that regardless of whether the option contract has been assigned to appellants, they have an equitable right to maintain the suit.

■ When the Browns exercised their option to buy, the option contract was converted into an executory contract of sale. McCaleb v. Wyatt, Tex.Civ.App., 257 S.W. 2d 880; Northside Lumber & Bldg. Co. v. Neal, Tex.Civ.App., 23 S.W.2d 858; San Antonio Joint Stock Land Bank v. Malcher, Tex.Civ.App., 164 S.W.2d 197. The Browns thereby became the equitable owners of the land, which interest they conveyed to appellants by their contract of sale. 43-A Tex.Jur., p. 84, sec. 73; 91 C.J.S. Vendor & Purchaser § 13, p. 863.

■ We think one succeeding to the rights of the purchaser may enforce a contract against the seller by joining the purchaser in the suit, so that the seller will be relieved of the danger of future liability, and by performing or offering to perform all the obligations incurred by the purchaser to the seller. Allison v. Shilling, 27 Tex. 450; Cheney v. Bilby, 8 Cir., 74 F. 52; Geo. V. Clark Co. v. New York, New Haven & Hartford R. Co., 279 App.Div. 39, 107 N.Y.S.2d 721.

■ "A suit for specific performance of a contract may be maintained by a party or privy to the contract, who has performed his part thereof; or, in the absence of inter-

vening equities, by a person claiming under such party, in privity of estate, representation, or title; or by a person who has an interest in the subject matter of the contract and suit." 81 C.J.S. Specific Performance § 23, p. 456.

In Townshend v. Goodfellow, 40 Minn. 312, 41 N.W. 1056, 1057, 3 L.R.A. 739, an owner contracted to sell land; before the conveyance was made, the purchaser contracted to sell it to another, who sued the seller for specific performance. The court said: " * * * one who has an equitable estate merely under an executory agreement may offer the premises for sale without waiting until he has obtained a deed. Tiernan v. Roland, 15 Pa. 429. But it is further suggested that in this case plaintiff was at the time a mere subpurchaser, having himself no contract with the executors, and both contracts remained wholly executory. Not being a party to the first contract, he is not bound by its terms, and could not compel the parties thereto to fulfill the same as between themselves, nor would the fact that they neglected to do so give him a right of action by virtue thereof. McCarthy v. Couch, 37 Minn. 124, 33 N.W. 777. But he necessarily purchased the equitable title of the first vendee subject to that contract, although, as between him and the latter, he did not assume its obligations; and, having purchased the entire interest of the first vendee, equity will interfere to protect his interest and enforce a deed to him from the vendor holding the legal title, upon a proper showing and tender of performance of the conditions subject to which it is so held, if the application is seasonably made. When a contract is made for the sale of an estate in land, the purchaser is treated in equity as the owner, and as trustee of the purchase money for the vendor, and the latter is considered the trustee of legal title for the purchaser. * * * So that a subpurchaser who has bought the equitable interests, although treated as equitable owner, takes his equitable title, not only subject to the conditions of his own contract, but

also to those of the first contract, and, if the latter are not complied with by his vendor, he can only enforce a deed by showing or tendering performance, and thereupon seek an adjustment of the equities between the parties, who must all be joined."

In Lenman v. Jones, 222 U.S. 51, 32 S. Ct. 18, 20, 56 L.Ed. 89, Miss Lenman entered into a contract to sell land to Mrs. Wilhoite. Mrs. Wilhoite contracted to sell the land to Jones. Jones sued Miss Lenman for specific performance. Said the court: "When Mrs. Wilhoite contracted to sell the land, she contracted to transfer all the rights she got by her contract with the owners of the land. As she, in popular legal language, became the equitable owner by her contract, she made the appellee the equitable owner by her contract with him,—that is, she gave him the right to insist in her place that the legal owner should give up the legal estate upon fulfillment of the conditions agreed."

The optioned tract was for many years a part of the rural homestead of the Williamsons. Appellees say that "at all material times" it remained a part of their rural homestead. Although conceding that if and while the property retained such homestead character specific performance could not be enforced, appellants contend that the homestead exemption has been lost by abandonment and by a change in the character of the property from rural to urban, and that when the property ceased to be a rural homestead their suit could be maintained.

Appellees say that if the property continued to be a part of the homestead at the time appellants asserted their adverse right, the contract cannot be enforced, and that it is immaterial that there may have been a cessation of the homestead exemption at a later time. We understand appellees to contend that the time appellants "asserted their right" was either when appellees allegedly repudiated the contract, or when appellants called upon appellees to perform, or possibly when suit was filed. Appellants insist that they have the right to prevail if

the property ceased to be homestead at any time before judgment was rendered. The question has given us difficulty; but we have concluded that suit will lie for specific performance at any time before the action is barred by limitation, whether the exemption ceased before or after the suit was filed, providing it had ceased when the case was tried.

In Goff v. Jones, 70 Tex. 572, 8 S.W. 525, 527, a husband and wife made a contract to sell their homestead, performable on July 8, 1883. It was not performed, and the property continued to be homestead until July 15, 1883. The contention was made that specific performance would not lie because there could be no alienation of the property until the wife signed, acknowledged, and delivered a deed. In rejecting that contention, the court said: "At the time fixed by the bond for its performance according to the allegations of plaintiff's amended petition it could not have been enforced, because at that time the property was still the homestead; but that is immaterial. We think if it was abandoned, and a new homestead was acquired, at any time before the bond should become barred, the suit for specific performance could be maintained."

In Wright v. Hays, 34 Tex. 253, a husband made a contract in 1857 to convey, "when the patent is obtained," what he later claimed as a part of his homestead. His wife was living at the date of the contract and until a few months before the trial. Suit was filed in 1861 and it was tried in 1869. The homestead exemption was pleaded. The court said: "This defense, so far as a specific performance was prayed for, might have been good at the time of executing the contract, as defendant was then a married man living on a portion of the 160 acre tract. But at the trial of the cause, this defense had failed him, as his wife had died and left him a single man."

▇▇▇ It appears that the time when the homestead character must exist to be available as a defense may differ in suits for specific performance of contracts to convey from that in suits for foreclosure of alleged liens. Deeds of trust and levies of execution or attachment never become liens on property which is homestead at the time of their execution or levy, even after the homestead status ceases to exist. This is so because Article 16, sec. 50, of the Texas Constitution, Vernon's Ann.St., declares them to be void. The subsequent cessation of the homestead exemption does not give them validity. But a contract to sell a homestead is not void, and "not unlawful, but good and valid." Wright v. Hays, 34 Tex. 253. It is merely unenforceable so long as the homestead status exists. Hudgins v. Thompson, 109 Tex. 433, 211 S.W. 586; Hill v. McIntyre Drilling Co., Tex.Civ.App., 59 S.W.2d 193. Likewise, while a judgment cannot become a lien on property which is homestead, it does become a lien when the homestead exemption ceases. Marks v. Bell, 10 Tex.Civ.App. 587, 31 S.W. 699, error refused. The sale of the homestead by the husband, without the joinder of the wife, becomes operative when the property ceases to be a homestead. Marler v. Handy, 88 Tex. 421, 31 S.W. 636; Irion v. Mills and Halbert, 41 Tex. 310; Grissom v. Anderson, 125 Tex. 26, 79 S.W. 2d 619; Weinert v. Cooper, Tex.Civ.App., 107 S.W.2d 593.

▇▇▇ We must presume that the court resolved all disputed issues of fact in such manner as will support the judgment. Rule 299, Texas Rules of Civil Procedure. We think the evidence was sufficient to support a finding that the optioned tract was part of the rural homestead when the contract was made. If the same may be said as to all times during the option period and at the time suit was filed, in our view of the case such findings are not conclusive of the question, for we think that if the homestead exemption ceased at any time while appellants were seasonably asserting their rights, the defense failed. And we understand that they have been asserting their rights from their first demand until and including this day. The inquiry therefore is, has the

**318**

rural homestead status ceased? We think the evidence is insufficient to support an implied finding that the optioned tract is still a part of the rural homestead.

 ██ Homestead character of property may cease because of abandonment or, in case of a rural homestead, by its becoming urban. Abandonment is accomplished by a cessation of use for homestead purposes with the intent not to so use it in the future. Bogart v. Cowboy State Bank & Trust Co., Tex.Civ.App., 182 S.W. 678. Although whether property has lost its homestead character has been held in some cases to be a question of law, it is generally a question of fact. M. H. Lauchheimer & Sons v. Saunders, 97 Tex. 137, 76 S.W. 750; Hibbs v. City Nat. Bank of Wichita Falls, Tex.Civ.App., 293 S.W. 350; Smith v. Little, Tex.Civ.App., 217 S.W.2d 881. The same rules apply whether the inquiry is as to abandonment of a part of a tract or the whole. Wynne v. Hudson, 66 Tex. 1, 17 S.W. 110.

The Williamson property is in the corporate limits of the City of Dallas. The residence is on a 4 acre tract which is separated from the 30 acre tract by Fisher Road and the H. & T. C. Railroad; the optioned tract joins the 30 acre tract on its east and northeast side. The evidence seems to be almost conclusive that appellees have ceased to use the optioned tract for any homestead purpose. Carl Williamson, one of the appellees, testified they last grew crops and ran cattle on the land about 1938, although they had some sheep on it in 1949. For a few years before his death in 1954, J. C. Williamson rented the tract to others who grazed cattle on it, and that practice has since been continued by appellees. The residence had been supplied with water by means of a pipeline from a well on the optioned tract, which was laid through the 30 acre tract; but this was discontinued in 1952, when the pipeline was destroyed by the development of the 30 acre tract.

The evidence that appellees' property is no longer rural but is urban in character

amounts almost to a demonstration. From the testimony of several witnesses and from aerial photographs in the record, it appears that the 30 acre tract is completely developed as a rather pretentious residential subdivision; across the railroad on the north and northwest side of the 30 acre tract and the optioned tract there is a large and almost completely developed residential district; across Mockingbird Lane on the south and southeast side of the 30 acre tract and extending alongside a portion of the optioned tract there is another residential development; northwest, west, and south of the homesite are residential districts rather closely built up; gas, lights, city water and sewerage services are available to the property; there are new and modern shopping centers in the vicinity and paved streets throughout the general area. We think the court's implied finding that the property is not urban is so against the great weight and preponderance of the evidence that the facts should be reexamined.

The judgment is reversed and the cause remanded.